Argued and submitted September 14, 1998, certified questions answered
February 11, 1999

# Kristine Sandoz ALLEN
## and Eric S. Sandoz,
### *Plaintiffs,*

*v.*

# Sheryl Ann HALL
## and Daniel Hall,
### *Defendants.*

(USDC CV-96-00563-JJ; USCA 96-35996; SC S45130)

974 P2d 199

Honorable Ferdinand F. Fernandez, Honorable Pamela Ann Rymer, and Honorable A. Wallace Tashima, Circuit Judges.

Margaret Fiorino, Portland, argued the cause for plaintiffs. With her on the brief were Julie R. Vacura and Fiorino & Vacura, LLP, Portland.

Steven Carl Berman, Portland, argued the cause for defendants. With him on the brief were Sara J. Ryan and Ball Janik, LLP, Portland.

Richard S. Yugler, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

GILLETTE, J.

## GILLETTE, J.

This case is before the court on two certified questions from the United States Court of Appeals for the Ninth Circuit. *See* ORS 28.200 *et seq.* (providing for certification of certain questions of Oregon law from specified federal courts and appellate courts of other states to Oregon Supreme Court). As framed by the Ninth Circuit, the questions are:

1. Does Oregon recognize the tort of intentional interference with prospective inheritance?

2. If a tort action for intentional interference with prospective inheritance is available, what are the elements of that tort?

Framed more narrowly, the two questions resolve themselves into a single issue: Have plaintiffs in this case, who have brought a tort action based on a theory that defendants wrongfully interfered with a prospective inheritance that otherwise would have gone to plaintiffs, alleged facts which, if proved, would form a basis for relief under Oregon law?[1] To that reformulated question, our answer is "Yes."

The underlying case arises out of a tort action that was filed in the United States District Court for the District of Oregon under 28 USC § 1332 (diversity of citizenship). The case was assigned to a magistrate judge. In that action, plaintiffs Kristine Sandoz Allen and Eric Sandoz alleged the following facts, as summarized by the magistrate judge:

"Following heart transplant surgery in 1984, Gregory Putman developed a number of serious medical problems. As his illness advanced, Putman became increasingly dependent on [defendants Sheryl and Daniel] Hall[ ] for assistance in managing his medical and financial needs. During the last four years of his life, Putman gave the Halls possession of various wills he had executed, placed Sheryl Hall's name on his bank accounts, and placed title to various motor vehicles in the Halls' names.

---

[1] This court reserves the authority to reformulate certified questions. *See, e.g., Western Helicopter Services v. Rogerson Aircraft*, 311 Or 361, 811 P2d 627 (1991) (so stating).

"On October 9, 1995, Putman executed a will devising substantially all of his assets, including homes in Pacific City, Oregon, and Oregon City, Oregon, to the Halls. That will, prepared on Putman's home computer, devised nothing to plaintiffs. Putman gave the Halls the original of this will.

"Putman drafted a second will on his home computer on October 13, 1995. This will, unlike the will executed four days earlier, left Putman's Oregon City home to plaintiffs.

"Putman met with an attorney, Stephanie Barrie, on October 19, 1995, in order to draft and execute a new will. Putman brought a copy of the October 13, 1995 draft with him to that meeting, and told Barrie that he wanted to leave his Oregon City home to plaintiffs. Putman told Barrie that his illness required that the new will be prepared immediately. Barrie prepared a will according to these instructions.

"Defendant Sheryl Hall became aware of Putman's efforts to change his will, and brought Putman for admission to Good Samaritan Hospital in Portland, Oregon, on October 30, 1995. At the hospital, Sheryl Hall falsely stated that Putman had been confused during the previous two weeks.

"Putman telephoned Barrie's office from the hospital on October 31, 1995, asking Barrie to return his call on his pager. Sheryl Hall telephoned Barrie the same day, asking Barrie to call her on Putman's pager regarding Putman's will.

"The next day, Barrie spoke with Sheryl Hall by telephone. Sheryl Hall told Barrie that Putman could not execute a new will because he was not lucid, and agreed to inform Barrie when he was lucid enough to sign a will. Sheryl Hall never telephoned Barrie with such information.

"On November 3, 1995, Sheryl Hall falsely claimed to have a power of attorney to decide whether Putman should be given life support, and instructed the Good Samaratin Hospital staff not to provide such support to Putman. Putman died two days later, deprived by Sheryl Hall's conduct of the opportunity to execute the will Barrie had prepared."

Plaintiffs further alleged that but for the Halls' intentional interference, they would have inherited the Oregon City home. They sought $245,000, the value of the home, in damages.

On the Halls' motion, the district court dismissed the action for failure to state a claim. The magistrate judge opined that, although some jurisdictions have recognized a claim for intentional interference with prospective inheritance, Oregon courts have not, and most likely would not, follow that trend. The judge also opined that, even if Oregon did recognize a claim for intentional interference with prospective inheritance, plaintiffs' complaint would fail, because it did not allege a necessary element of such a claim, *viz.*, that the conduct complained of be "independently tortious."

On plaintiffs' appeal, the Ninth Circuit concluded that, in the absence of controlling precedent from the courts of this state regarding the existence or elements of the tort of intentional interference with prospective inheritance, certification of the foregoing two questions under ORS 28.200 *et seq.* was appropriate. We accepted certification. *See generally Western Helicopter Services v. Rogerson Aircraft*, 311 Or 361, 811 P2d 627 (1991) (setting out statutory and discretionary criteria for acceptance of certified questions). However, as already indicated, we do not confine our answer to the strict terms of the Ninth Circuit's questions. Rather, we direct our answer at what we perceive to be the substance of the Ninth Circuit's inquiry. We turn to the questions.

1. *Does Oregon recognize the tort of intentional interference with prospective inheritance?*

On the facts presented, this case does not afford this court a reason to resolve that specific question. It is true that this court to date has not recognized a separate and distinct claim of intentional interference with a prospective inheritance. The reason that the issue need not be answered now (or, perhaps, ever) is that, under Oregon law, an intentional interference with a prospective inheritance may be actionable under a reasonable extension of the well-established tort known as intentional interference with economic relations. Although, heretofore, this court has applied that tort only to contractual and business relationships and prospects, we are

persuaded that the tort also may, by a reasonable and principled extension, be made applicable to some *noncommercial* relationships and prospects, such as the one alleged by plaintiffs in the present case.

Our cases to date have stated the elements of the tort of intentional interference with economic relations as follows: (1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage); (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and (6) damages. *See McGanty v. Staudenraus*, 321 Or 532, 535, 901 P2d 841 (1995) (stating elements); *Uptown Heights Associates v. Seafirst Corp.*, 320 Or 638, 651, 891 P2d 639 (1995) (same). As noted, this court heretofore has applied those elements only to business and contractual relationships and prospects. It follows that, before we attempt to relate the allegations in the present complaint to the elements of that tort, we must explain why the tort may, by a reasonable and principled extension, be made applicable to a prospective inheritance — typically a noncommercial expectancy.

■      The answer lies in the very close analogy that exists between an expectancy of inheritance and those other interests to which this court already has extended the protections of the tort of intentional interference with prospective economic advantage. Although an expectancy of inheritance is, by definition, purely prospective, so are many of the commercial interests that have been associated with and are protected by the tort. *See McGanty*, 321 Or at 535 (noting that tort protects prospective economic advantage in addition to existing contracts and business relationships). Moreover, prospects of inheritance long have been recognized as interests that are worthy of common-law protection. *See, e.g., Hale v. Groce*, 304 Or 281, 744 P2d 1289 (1987) (permitting intended beneficiary of will to sue lawyer for failing to include gift to intended beneficiary in will as directed by testator); *Brown v. Hilleary*, 133 Or 26, 286 P 593 (1930) (decedent's heirs could sue to set aside deed that was procured by undue influence); *Groesbeck v. Groesbeck*, 49 Or 113, 88 P 870

(1907) (decedent's heirs permitted to set aside sale of property that was procured from testator before his death by fraud and undue influence). Ultimately, an expectancy of inheritance is an interest that fits by logical extension within the concept underlying the tort of intentional interference with prospective economic advantage and, absent some legitimate reason for excluding it, may be deemed to be covered by that theory of recovery.

Defendants suggest that there are a number of reasons for excluding the expectancy of an inheritance from this tort, or from any other kind of common-law protection. They argue, first, that the established tort is logically inapposite— that it is rooted in a "law and economics" paradigm that recognizes that society may want to encourage "efficient" breaches of contracts and deems such breaches as privileged. Defendants contend that, because there is no analogous concept of an efficient breach in the inheritance context, the reason for recognition of the intentional interference with prospective economic advantage tort cannot apply in that context.

Defendants are correct that some of our intentional interference cases include discussions of economic theory and privilege to interfere that are irrelevant in the inheritance context. Examples are *Top Service Body Shop v. Allstate Ins. Co.*, 283 Or 201, 582 P2d 1365 (1978), and *Wampler v. Palmerton*, 250 Or 65, 439 P2d 601 (1968). However, neither case purports to limit recovery, once and for all, to those situations to which their economic theory discussions apply. The fact that economic privilege *can* form part of the wrongfulness analysis does not mean that it is a necessary element of the tort.

Defendants next argue that recognizing *any* liability in tort for the kind of interference alleged here could undermine a central element of this state's common law and statutory system of probate—the so-called "testamentary intent" rule. That rule holds that, for purposes of disposing of a decedent's estate, the decedent's intent is to be ascertained only from the four corners of a validly executed will, if one exists.[2]

---

[2] *See* ORS 112.227 ("The intention of a testator as expressed in the will of the testator controls the legal effect of the disposition of the testator."); *see also, e.g.,*

Defendants contend that recognizing tort liability for intentional interference with a prospective inheritance could violate that rule by, in essence, permitting a plaintiff to obtain relief that is contrary to a will's clear import by alleging and proving facts *outside* of the will. They suggest, in fact, that that potential exists in the present case.

We disagree. We are considering a tort action, not an action to set aside a will. Although the testamentary intent rule clearly is controlling in a will contest, it does not follow that the rule must be followed in the tort context. If, as alleged here, a party has obtained the benefit of the testamentary intent rule by committing a tort against a third party, then the policy of the law should be to provide an avenue for relief from the tortious act. To do so here still would give defendants all the benefits that the testamentary intent rule calls for them to receive. Once possessed of those benefits, however, defendants would be liable to respond in damages for torts that they may have committed—a separate legal inquiry with its own societal justifications.

Defendants also argue that recognizing tort liability for intentional interference with a prospective inheritance would undermine the legislature's clear intent specifically to limit the kinds of challenges that can be brought to contest the disposition of property under a will. According to defendants, the legislature has created, in the Oregon Probate Code, a "complete" statutory scheme for resolving all disputes that arise out of the disposition of property under a will. The legislature's intent to occupy the field in that manner is evident, defendants contend, from the fact that the probate code limits and explicitly enumerates the permissible bases for challenging a will. *See, e.g.*, ORS 112.270 (requiring written evidence of any contract to create, revoke or not make a will); ORS 112.285(1), (2) (setting out limited circumstances under which court will infer intent to revoke a will); ORS 113.075(1) (describing limited group of persons who have standing to challenge a validly executed will); ORS 113.075(1)(a)-(c) (setting out limited reasons for contesting

*Voden v. Yates*, 252 Or 110, 112, 447 P2d 94 (1968) (testator's intention must be ascertained from language of will); *Unander v. U.S. Nat'l Bank et al.*, 224 Or 144, 152-53, 355 P2d 729 (1960) (evidence of testamentary intent different than that expressed in will is not admissible).

probate or validity of a will). Defendants contend that allowing a tort action for interference with a prospective inheritance would invade the legislature's province by permitting disappointed survivors to circumvent that legislative scheme.

In making the foregoing argument defendants rely, in part, on *Burnette v. Wahl*, 284 Or 705, 588 P2d 1105 (1978), where this court was asked to recognize a tort claim that children could bring against their parents for failing to perform parental duties. The court declined to do so, finding that the contemplated tort touched on an extremely complex area of social planning, that the legislature had responded to that complexity by enacting "comprehensive social regulations," and that recognizing the tort might intrude on that "total legislative scheme." *Id.* at 712. Defendants argue by analogy that the probate code also is a "complete" legislative response to a complex social problem, *viz.*, property dispositions under wills. As such, they argue, *Burnette* dictates that we refrain from recognizing any tort liability for interfering with a prospective inheritance, because doing so might interfere with the legislature's scheme.

■ Defendants ascribe a breadth of purpose to the Oregon Probate Code that is not borne out by the statutes. Although it is true that that code strictly controls the kinds of issues that can be litigated in a proceeding to probate a will, and presumably requires plaintiffs to pursue those issues in the probate system where possible, that fact does not necessarily translate into a broader legislative purpose to deny legal significance to any other issue that might arise out of a decedent's making of, or failure to make, a will. Whether or not the probate code is or may be a "complete" legislative scheme, it is complete only within the confines of its subject matter, *i.e.*, will contests. A tort claim does not become a will contest simply because it arises out of facts relating to the making or unmaking of a will.

The correctness of the foregoing should be clear from our decision in *Hale*. In that case, we permitted a plaintiff to bring a third-party negligence action against a lawyer who failed to carry out the instructions of his client, the deceased testator, to include a specific bequest to the plaintiff in his

will. 304 Or at 281. Although the preclusive scope of the probate code was not at issue in that case, the facts speak for themselves: We held that the complaint stated a claim, although the complaint turned on an allegation that the testator had a different intent than that expressed in his properly executed and duly probated will.

To conclude: Defendants have offered no persuasive reason for declining to extend the class of interests that are protected by the tort of intentional interference with economic relations to include a prospective inheritance. It follows that, for purposes of the first element of that tort, as extended, a clear prospect of an inheritance can qualify as a protected economic relationship.

■      We turn, now, to the complaint that is at issue in this case. As noted, plaintiffs have alleged facts that satisfy the first element of the tort, *viz.*, the existence of a prospective economic advantage in the form of a prospective inheritance. They also have alleged the second and third elements, *viz.*, an intentional interference by a third party: They have alleged that, after learning that Putman intended to change his will, Sheryl Hall—a third party—took steps to prevent that eventuality by having Putman admitted to the hospital under false pretenses, by contacting Putman's lawyer and falsely informing her that Putman could not execute a new will, and by falsely claiming a power of attorney to stop life support, thereby depriving Putman of the opportunity to execute the new will that his lawyer had prepared.

Turning to the fourth element, we must consider whether Sheryl Hall's interference allegedly was accomplished through improper means or for an improper purpose. In *Top Service*, we stated that that element is satisfied

> "when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself. Defendant's liability may arise from improper motives or from the use of improper means. They may be wrongful by reason of a statute or other regulation, or a recognized rule of common law."

283 Or at 209-10. In a related footnote, we said:

> "Commonly included among improper means are violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood. See Fleming, [*The Law of Torts*], at 612-14 [(4th ed 1971)]; Prosser, [*Handbook of the Law of Torts*], § 129, at 936-937 [(4th ed 1971)]; *Restatement (Second) of Torts* § 766, comments j, k, § 767, Comment c (Tent. Draft No. 23, 1977). As the latter comment points out, in a claim of improper interference with plaintiff's contractual relations, it is not necessary to prove all the elements of liability for another tort if those elements that pertain to the defendant's conduct are present. For instance, fraudulent misrepresentations made to a third party are improper means of interference with plaintiff's contractual relations whether or not the third party can show reliance injurious to himself."

*Id.* at 210 n 11.

■　Under the foregoing standard, the conduct alleged in the present case was improper. The complaint alleges that Sheryl Hall intentionally and falsely represented to Putman's lawyer that Putman was not lucid enough to execute a will. The complaint further alleges that Putman thereafter did not have an opportunity to execute the will prepared by the lawyer. The complaint further alleges that Hall intentionally and falsely represented to the hospital that she had a power of attorney that authorized her to remove Putman from life support. There is no separate allegation that the hospital relied on that false representation, but the complaint does allege that Putman died two days later, "deprived by Sheryl Hall's conduct of the opportunity to execute the will [that his lawyer] had prepared." In sum, plaintiffs have alleged that Sheryl Hall interfered by means of fraudulent misrepresentations, means that are improper within the meaning of *Top Service*.

To state a claim, plaintiffs also must allege facts that establish a causal relationship between the interference and the loss of the prospective advantage. They have done so. They have alleged that Putman drafted an alternative will that named them as beneficiaries on October 13, 1995, that he brought the draft to his lawyer on October 19, with instructions to prepare it for execution, that he attempted to

reach his lawyer by phone, wishing to talk about the will, on October 31, and that, on the next day, Sheryl Hall prevented the lawyer from talking to Putman through misinformation about Putman's state of mind. Those facts create a reasonable inference that Putman desired to change his will to name plaintiffs as beneficiaries, that he intended to act on that intent, and that he would have been able to do so before his death on November 5, were it not for Hall's intentional interference.

As to the final element of the claim, damage, plaintiffs have alleged that the interference resulted in the loss of the intended bequest, Putman's home, valued at approximately $245,000.

We have shown that, under Oregon law, plaintiffs' complaint states a claim under an appropriate extension of the tort of intentional interference with economic relations. Before we conclude our analysis, however, we note one final argument offered by defendants—that the elements of the traditional intentional interference with economic relations tort are insufficiently demanding in the prospective inheritance context, particularly when compared to the elements of the tort of intentional interference with prospective inheritance, as it has been recognized by the *Restatement (Second) of Torts* § 5774B (1979) and other jurisdictions.[3]

We decline to involve ourselves in that argument. The question whether there is, in fact, a difference between the "independently tortious" and "reasonable certainty" of realization elements of the intentional interference with a prospective inheritance tort, as that tort is recognized by the *Restatement* and other jurisdictions, and the "improper means or purpose" and "causal effect" elements of Oregon's

---

[3] The *Restatement (Second) of Torts*, section 774B (1979), provides:

"One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift."

The jurisdictions that recognize the tort of intentional interference with prospective inheritance either repeat that wording, or require that the interferer's conduct be "independently tortious."

economic relations tort, is a purely abstract one for the purposes of this case. That is so because, as we have explained, plaintiffs' allegations are sufficient to meet the requirements of a tort presently recognized in Oregon. Because a reasonable and principled extension of that tort can encompass the facts that plaintiffs allege, Oregon law demands no more.

In summary: The answer to the questions propounded to us by the Ninth Circuit, as we have reformulated them, is that there is no need, in the case before us, to decide in the abstract whether to recognize a separate and distinct claim for intentional interference with prospective inheritance in this state. We hold that the complaint in the present case states a claim under a reasonable extension of the scope of the tort of intentional interference with economic relations.

Certified questions answered.