**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOHN M. GARDNER; SUSAN L.
GARDNER, husband and wife; MT.
HOOD POLARIS, INC., an Oregon
corporation,
           *Plaintiffs-Appellants,*

            v.

TOM MARTINO, dba Tom Martino
Show; WESTWOOD ONE, INC., a
Delaware corporation; CLEAR
CHANNEL COMMUNICATIONS, INC., a
Texas corporation,
           *Defendants-Appellees.*

No. 06-35437

D.C. No.
CV-05-00769-
BR/HU

JOHN M. GARDNER; SUSAN L.
GARDNER, husband and wife; MT.
HOOD POLARIS, INC., an Oregon
corporation,
           *Plaintiffs-Appellants,*

            v.

TOM MARTINO, dba Tom Martino
Show; WESTWOOD ONE, INC., a
Delaware corporation,
           *Defendants-Appellees.*

No. 06-35931

D.C. No.
CV-05-00769-
BR/HU

OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted
July 7, 2008—Portland, Oregon

4821

Filed April 24, 2009

Before: Harry Pregerson and Stephen Reinhardt,
Circuit Judges, and Consuelo B. Marshall,* District Judge.

Opinion by Judge Marshall

*The Honorable Consuelo B. Marshall, United States District Judge for
the Central District of California, sitting by designation.

## COUNSEL

Linda L. Marshall, Lake Oswego, Oregon, for the plaintiffs-appellants.

Charles F. Hinkle, Stoel Rives LLP, Portland, Oregon, for the defendants-appellees.

## OPINION

MARSHALL, District Judge:

Plaintiffs-Appellants, John M. Gardner, Susan L. Gardner, and Mt. Hood Polaris, Inc. (collectively "Appellants") brought this action against Defendants-Appellees, Tom Martino, Westwood One, Inc., (collectively "Appellees") and Clear Channel Communications, Inc.,[1] for defamation, false light invasion of privacy, intentional interference with economic relations, and intentional interference with prospective economic advantage, based on statements made by Martino during his live radio show broadcast on station KHOW in

---

[1] Pursuant to stipulation by the parties, the appeal was voluntarily dismissed as to Appellee Clear Channel Communications, Inc.

Denver, Colorado (later rebroadcast on station KEX in Portland, Oregon).

The action was dismissed without prejudice after the district court granted Appellees' special motion to strike under Oregon's anti-SLAPP statute, Or. Rev. Stat. § 31.150, and held that Martino's statements were not defamatory as a matter of law. The district court also denied two requests by Appellants to amend the complaint and subsequently awarded attorney's fees[2] to Appellees as the prevailing party pursuant to Oregon's anti-SLAPP statute, Or. Rev. Stat. § 31.152. Appellants timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.  BACKGROUND

John and Susan Gardner own and operate Mt. Hood Polaris, Inc., a retail store located in Boring, Oregon that sells personal watercraft ("PWC") and other recreational vehicles. Melissa Feroglia ("Feroglia") purchased a PWC manufactured by Polaris Industries, Inc.[3] from Appellants. Shortly thereafter, the PWC she purchased experienced several overheating problems. Feroglia asked John Gardner for a refund but did not receive one.

*The Tom Martino Show* is a nationally-syndicated radio talk show that airs telephone conversations between Martino and callers seeking help with their consumer problems. Feroglia contacted *The Tom Martino Show* about her dispute with Appellants and ultimately, she was invited to call in to the show and explain her problem to Martino live on the air.

---

[2]Appellants appealed the September 20, 2006 Order that awarded attorney's fees to Appellees. Appellants have not briefed this issue, therefore, it will not be reviewed by this Court.

[3]Melissa Feroglia and Polaris Industries, Inc. are not named parties in this lawsuit.

Martino spoke with Feroglia and then discussed her complaints over the course of approximately fifty-five minutes. Relevant portions of the program are as follows:

**Segment One**

Martino:        All right, I'm Tom Martino, let's talk to Melissa [Feroglia] who wants to talk about a jet ski she's not happy with . . . why are you unhappy with this jet ski?

Feroglia:       Well, I've owned it for four and half months, and it's only run for 25 hours.

Martino:        Why?

Feroglia:       And it's been in the shop . . .

Martino:        Why, why?

Feroglia:       Multiple over-heating problems.

. . .

Martino:        What kind is it?

Feroglia:       It's a Polaris MSX150.

. . .

Martino:        Well, why aren't they fixing it?

Feroglia:       They've tried. They put a new engine in at 18 hours.

Martino:        A whole new engine?

Feroglia:	A whole new engine. And that didn't work. Labor Day weekend it broke down again. The problem is when it breaks down it stops running.

. . .

Feroglia:	They've [Appellants] had it since September 8th. The dealer [John Gardner] told me he was taking it back, that it was too much trouble for him to work on, and in his opinion it was a bad machine. He wrote out an invoice saying that it was a buy back, and now they are not honoring that.

Martino:	So, you don't have anything? You don't have your money or the machine?

Feroglia:	No.

Martino:	Will he give your machine back?

Feroglia:	He will. He says that they think they've corrected the problem. They took an intake valve that brings water to cool it . . .

Martino:	Yeah.

Feroglia:	. . . and drilled it out to make it bigger and see if that would help.

Martino:	Why don't they . . .

Feroglia: It's not a new part, they just stuck a drill in it.

Martino: Why don't they, why don't they go out and try it?

Feroglia: Well, on the 8th when I called and asked why it hadn't been tried, they said, all of a sudden they called me back two hours later and said, oh, we did try it, it works great.

Martino: Yeah, they're just, yeah, they're just lying to you.

Feroglia: Right, 'cause now it's November in Washington and I can't ride it to find out.

Martino: Yeah, and you won't know until next spring. But you have in writing something that says a buy back.

Feroglia: No, he put it in writing, and I asked for a copy. He said I didn't need it. However, I do have the senior shop technician verifying that he had the buy back order and was told not to work on the boat.

Martino: You actually have, what do you mean you have him? He'll admit it?

Feroglia: He did admit it to me on . . .

| | |
|---|---|
| Martino: | No, but will he admit it to us? Will they admit to us that they l . . . they went back on their word? |
| Feroglia: | I don't know, they might. |

**Segment Two**

| | |
|---|---|
| Martino | Now, Chris,[4] you called the dealer, this Polaris dealer and what's the name of the dealer, let's clarify. |
| Chris: | Yes. It is Mt. Hood Polaris. |
| Martino: | Mt. Hood Polaris. And they say what? They . . . did they admit they promised her to buy it back? |
| Chris: | No, I spoke with the general manager and he basically said, "You're going to have to contact Polaris." And that's it. I said, "You don't want to help her at all? You don't want to at least assist her in this process?" |

**Segment Three**

| | |
|---|---|
| Martino: | I'm going to say this, Polaris sucks. |
| . . . | |

---

[4]Chris Kane is one of the producers of *The Tom Martino Show*. As part of Kane's duties, he assists Martino during the show by calling the business during the live broadcast to get a comment from the business owner or authorized representative with respect to the consumer's complaint.

Martino: So, we called the dealer. The dealer says "There's nothing we can do for her. We're not going to talk about it. She needs to go through the manufacturer." So, we called the manufacturer - Polaris Industries. They said she has to go through the dealer. Now listen carefully. She has to go through the dealer. The dealer says she has to go through the manufacturer. Mt. Hood Polaris, Polaris Industries equals sucks. Why? Because she has nowhere to go. Ping, pong [clicking noises] Polaris Industries, Mt. Hood Polaris. I urge you to let them know you will never buy a Polaris product knowing that they treat people like this.

## II. DISCUSSION

Appellants filed their initial complaint in the Circuit Court for the State of Oregon for the County of Clackamas. The complaint was subsequently removed by Appellees to federal court on the basis of diversity and federal question jurisdiction. 28 U.S.C. §§ 1331, 1332. Thereafter, Appellants filed a first amended complaint in federal court as a matter of right pursuant to Fed. R. Civ. P. 15(a). Appellants' claims in the first amended complaint are based on Martino's statements in segment one of the broadcast, "they are just lying to you" and "[w]ill they admit to us they lied, they went back on their word."[5]

---

[5]Magistrate Judge Hubel noted in his Findings and Recommendation that "there appears to be a disputed fact regarding the second 'lying' statement. In the transcript, Martino states '[n]o, but will he admit it to us? Will they admit that they . . . they went back on their word?' [Appellants]' Amended Complaint alleges that Martino actually used the word 'lied.' " The Magistrate assumed for the purposes of ruling on Appellees' special motion to strike that Martino used the word "lied" or "that listeners would have heard enough of the word to understand it to be 'lied.' " We make the same assumption.

Appellees moved to strike all claims in the complaint pursuant to Or. Rev. Stat. § 31.150. Magistrate Judge Dennis James Hubel recommended granting Appellees' motion to strike and concluded as a matter of law that Martino's statements were nonactionable opinion under both the First Amendment and Oregon common law.[6] The Magistrate referred the Findings and Recommendation to District Judge Anna J. Brown for her review. Judge Brown adopted the recommendation and dismissed the action without prejudice.

## A.   Oregon's Anti-SLAPP Statutes

Or. Rev. Stat. §§ 31.150 - 31.155 comprise Oregon's anti-SLAPP ("Strategic Lawsuit Against Public Participation") statutes. Anti-SLAPP statutes are designed to allow the early dismissal of meritless lawsuits aimed at chilling expression through costly, time-consuming litigation. *Verizon Delaware, Inc. v. Covad Comms. Co.*, 377 F.3d 1081, 1090 (9th Cir. 2004). Section 31.150 allows defendants to bring a special motion to strike a claim which shall be treated as a motion to dismiss under Or. R. Civ. P. 21 A and requires the court to enter a "judgment of dismissal without prejudice" if the motion is granted. The court's consideration of a special motion to strike is a two-step process. First, the defendant has the initial burden to show that the challenged statement is within one of the categories of civil actions described in Or. Rev. Stat. § 31.150(2).[7] If the defendant meets the initial burden, "the burden shifts to the plaintiff in the action to establish

---

[6]Local Rule 72-1 for the District of Oregon allows "every magistrate judge to conduct all pretrial proceedings contemplated by 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72, without further designation or assignment from the court."

[7]In pertinent part, "(c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or (d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case. If the plaintiff meets this burden, the court shall deny the motion." Or. Rev. Stat. § 31.150(3).

Appellants do not challenge that the Appellees met their initial burden to show that Martino's statements fall within one of the categories of civil actions described in Or. Rev. Stat. § 31.150(2). Instead, Appellants appeal the district court's ruling that Appellants failed to meet their burden of establishing that there is a probability that they would prevail on their claims as alleged in the first amended complaint. Appellants argue that Martino's statements constitute false assertions of fact and do not receive First Amendment protection.

## B. Defamation Claim

### 1. Standard of Review

Whether an allegedly defamatory statement is one of opinion or fact is a question of law. *Slover v. Or. Bd. of Clinical Soc. Workers*, 927 P.2d 1098, 1100 (Or. App. 1996). We review *de novo* the district court's ruling that Martino's statements are not defamatory as a matter of law. *Knievel v. ESPN*, 393 F.3d 1069, 1072 (9th Cir. 2005).

### 2. Standard of Law

[1] There are several decisions in this Circuit which address defamation claims and the standards that should be applied. In *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), the Supreme Court rejected the bright-line approach previously used by this Circuit and held that while "pure" opinions (those that do not imply facts capable of being proven true or false) are protected by the First Amendment, a statement that may imply a false assertion of fact is actionable even if it is

couched as a statement of "opinion." *Id.* at 19; *see also Partington v. Bugliosi,* 56 F.3d 1147, 1152-53 (9th Cir. 1994).

**[2]** In *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990), we held that the threshold question after *Milkovich* in a defamation claim is "whether a reasonable factfinder could conclude that the contested statement implies an assertion of objective fact." If the answer is no, the claim is foreclosed by the First Amendment. We use a three-part test to resolve this question: (1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates the impression, and (3) whether the statement in question is susceptible of being proved true or false. *Partington*, 56 F.3d at 1152 (*citing Unelko*, 912 F.2d 1053); *see also Knievel*, 393 F.3d at 1075 (noting the three parts for the "totality of the circumstances" test as (1) the broad context; (2) the specific context and the content of the statement; and (3) whether the statement is sufficiently factual to be susceptible of being proved true or false).

In *Partington,* we held that when a speaker outlines the factual basis for his conclusion, his statement is not defamatory and receives First Amendment protection. 56 F.3d at 1152-63. In that case, the defendant's book, *And The Sea Will Tell,* implied that the plaintiff represented his clients poorly in a murder trial. *Id.* at 1150-51. We held that the defendant's statements in the book were not defamatory because the book's general tenor made clear that the defendant's statements were from his personal viewpoint, and not assertions of an objective fact. *Id.* at 1153.

In *Underwager v. Channel 9 Australia*, 69 F.3d 361, 367 (9th Cir. 1995), we noted that the word "lying" is not always defamatory because the word applies to a "spectrum of untruths including 'white lies,' 'partial truths,' 'misinterpretation,' and 'deception' " which may be statements of nonac-

tionable opinion. The defendant in *Underwager* was sued for rebroadcasting a television show interview where the speaker said the plaintiff was "lying" about his credentials as an expert in the child psychology field. *Id.* However, the plaintiff failed to show that the challenged statement implied a verifiable assertion of perjury and therefore the statement was protected under the First Amendment. *Id.*

In *Flowers v. Carville*, 310 F.3d 1118, 1129 (9th Cir. 2002), we refined the *Partington* rule to protect a speaker who reasonably relies on facts that may be false. In that case, Gennifer Flowers sued George Stephanopoulos and James Carville for defamation after they claimed she lied about her affair with President Bill Clinton and "doctored" recordings of intimate phone calls from Clinton that she secretly taped. *Id.* at 1122. Stephanopoulos and Carville argued that their statements were protected because they relied on news reports that the tapes were selectively edited. We explained that in the case of a public figure, "unless defendants knew the news reports were probably false or had some obvious reason to doubt their accuracy, their reliance is protected by the First Amendment. But if it turns out that defendants knew the news reports were wrong or acted with reckless indifference in the face of some clear warning sign then they weren't entitled to repeat them publicly and later claim that they were merely expressing nondefamatory opinions." *Id.* at 1129.

Finally, and most recently, in *Manufactured Home Communities, Inc. v. County of San Diego*, 554 F.3d 959, 964 (9th Cir. 2008), we held that a defendant's statements that accused the plaintiff of lying without expressly disclosing a factual basis for the statements could be defamatory. We remanded the case for further proceedings because in that case, unlike in *Partington*, the defendant's statements were "not clearly attached to . . . an outline of fact, nor did she explicitly link her statements to an express factual basis." *Id.* at 965.

### 3.  Analysis of Appellants' Defamation Claim

Appellants seek reversal of the district court's ruling that Martino's statements in segment one of the broadcast were protected expression under the First Amendment. The Magistrate Judge explained that the challenged statements could have been referring to any one of three potential lies: "(1) a lie by plaintiffs when they allegedly said they would buy the PWC back; (2) a lie by plaintiffs when they denied saying they would buy the PWC back; and (3) a lie by plaintiffs when they said they had tested the PWC and it 'worked great.' " Appellants argue that Martino's statements are defamatory because the factual basis that Martino relied on was false and Martino's interview with Feroglia was devoid of loose, hyperbolic language so that listeners would assume Martino was stating a fact about Appellants. We do not need to resolve which "lie" Martino was referring to in the contested statements because we hold that Martino's statements are nonactionable opinion, which is protected by the First Amendment.

### i.  Martino's Reliance on Feroglia's Factual Statements Was Reasonable

**[3]** A review of the context in which Martino made his comments, "they're lying to you," and "Will they admit to us that they l . . . they went back on their word?" demonstrates that these statements were not assertions of fact. *The Tom Martino Show* is a radio talk show program that contains many of the elements that would reduce the audience's expectation of learning an objective fact: drama, hyperbolic language, an opinionated and arrogant host, and heated controversy. *See Knievel v. ESPN*, 393 F.3d 1068, 1075 (9th Cir. 2005) (analyzing the format, structure, the language used, and the expectations that the target audience would have with regard to the type of information that might be found in the context, and noting that such context might be "paramount," if not "dispositive"). In the troubleshooting segment of the

show in which the allegedly defamatory comments were made, Feroglia, a frustrated consumer, called in to narrate her story on the air. It was clear to all that Martino had no independent knowledge of the complaint at this point.[8]

**[4]** Because Martino's "lying" statements were made in reliance on the facts outlined on air by Feroglia in the minutes preceding his commentary, like in *Partington* and unlike in *Manufactured Home Communities*, no reasonable listener could consider Martino's comments to imply an assertion of objective facts rather than an interpretation of the facts equally available to Martino and to the listener. *See Partington*, 56 F.3d at 1156. As we stated in *Partington*, when it is clear that the allegedly defamatory statement is "speculat[ion] on the basis of the limited facts available," 56 F.3d at 1156, it represents a non-actionable personal interpretation of the facts. *See id.*; *see also Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) ("[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.").

**[5]** Appellants argue, however, that Feroglia's statements were false and that therefore Martino's reliance on her facts is unprotected under *Flowers*. The flaw in Appellants' argument is that it ignores the specific language in *Flowers* that protects reliance on the statements of third-parties unless the defendant "knew" that the statements were probably false or "had some obvious reason to doubt their accuracy." *Flowers*, 310 F.3d at 1129. In that case, Flowers was a public figure, *id.* at 1129-1131, but even assuming Appellants are private

---

[8]Appellants have not alleged facts to the contrary. Although *The Tom Martino Show* apparently pre-selected Feroglia to call into the show, there is no allegation that Martino knew anything about Feroglia's complaint other than what she told his staff, nor that what she said during the prior process differed from what she said while on the air.

figures, Martino's reliance on Feroglia's factual statements would be protected unless he was negligent or unreasonable in doing so. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974) (holding that where a statement involves a private figure on a matter of public concern, a plaintiff must show that the false connotations were made with some level of fault); *Bank of Oregon v. Ind. News, Inc.*, 693 P.2d 35, 43 (Or. 1985) (holding that "plaintiffs must prove that the false and defamatory statements were made negligently, *i.e.*, without due care to ascertain whether they were true."). Thus, the analysis does not turn on whether Feroglia's story was wrong as urged by Appellants but on whether Martino's reliance on those facts was reasonable.

**[6]** We conclude that the Appellants have not presented substantial evidence to support a prima facie case that Martino's reliance on Feroglia's story was unreasonable or negligent. The declarations submitted by the Appellants show that Feroglia's statements may have been false, but do not show that Martino was negligent or unreasonable in relying on Feroglia's story, given the nature of talk shows, such as his. At most the declarations show only that Martino's show did not contact Appellants before putting Feroglia's call on the air, but such prior investigation is not required in the context of a radio show that takes live calls on the air. Additionally, Appellants were given the opportunity to call in to the program and explain their version of events but chose not to do so.

**[7]** We decline to apply a lesser standard than the "reasonable reliance" standard because it would be unreasonable to require a speaker to determine the actual truth or falsity of every fact the speaker relies on before stating his or her opinion. A lesser standard than the "reasonable reliance" standard, as proposed by Appellants, would chill speech and frustrate the purpose of the First Amendment.

### ii.   The Specific "Lying" Statements

[8] Martino's "lying" statements were also not sufficiently factual to imply a false factual assertion. Rather, the statements were more like the accusation that Underwager was "perseverating" regarding his professional credentials — an accusation that is a "nonactionable rhetorical hyperbole, a vigorous epithet used by those who considered [the appellant's] position extremely unreasonable." *Underwager*, 69 F.3d at 367 (internal quotation marks omitted). Martino made at least two loose, hyperbolic statements during the broadcast, which were an obvious exaggeration ("Polaris sucks" and "Polaris Industries plus Mt. Hood Polaris equals sucks"), so that it would be understood that the contested statements were the type of obvious exaggeration generally employed on Martino's program and held to be nonactionable in *Underwager*, 60 F.3d at 361, not false factual assertions.

We do not find that the holdings in *Milkovich*, 497 U.S. 1, or *Manufactured Home Communities, Inc*., 554 F.3d 959, are applicable to this case because Martino's statements do not rise to the same level of criminal accusations that were at issue in those cases. In *Milkovich*, the defendant published a newspaper opinion article entitled "Maple beat the law with the big lie," which asserted that the plaintiff, a former high school wrestling coach, committed perjury in a judicial proceeding to cover up his team's altercation with another high school's team. *Milkovich*, 497 U.S. at 4-5. The Supreme Court held that the defendant's statements were defamatory because the article did not use the "sort of loose, figurative, or hyperbolic language which would negate the impression that the writer was seriously maintaining that [plaintiff] committed the crime of perjury." *Id.* at 2. In *Manufactured Home Communities, Inc.*, 544 F.3d 959, defendant county supervisor Diane Jacobs made several comments to the local media alleging that the plaintiff had lied to the Department of Environmental Health about its clean up efforts in response to a sewage spill and also made a claim that the District Attorney was inter-

ested in following up to determine whether there were civil and/or criminal actions that should be filed against the plaintiff. *Id.* at 963-64. Martino's statements are factually distinguishable because he did not accuse Appellants of committing a serious civil and/or criminal violation.

**[9]** In sum, we hold that the statements of which Appellants complain were not assertions of fact.

## C.    Appellants' Requests to Amend the Complaint

### 1.    Standard of Review

We review the district court's denial of leave to amend the complaint for abuse of discretion. *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 677 (9th Cir. 1993). A district court does not err in denying leave to amend where the amendment would be futile. *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) (internal citation omitted). "When a proposed amendment would be futile, there is no need to prolong the litigation by permitting further amendment." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1088 (9th Cir. 2002) (affirming trial court's denial of leave to amend where plaintiffs could not cure a basic flaw — inability to demonstrate standing — in their pleading).

### 2.    Analysis

#### i.    Applicability of Anti-SLAPP Statutes in Federal Diversity Cases

**[10]** Appellants argue that the district court erred when it did not permit Appellants to file an amended complaint and argue that Oregon's anti-SLAPP statute, which requires entry of a judgment of dismissal without prejudice, directly conflicts with the Federal Rules and Oregon's civil procedure rules, both of which favor liberal amendment. Appellants rely

on the language in Or. Rev. Stat. § 31.150 which states that "[t]he special motion to strike shall be treated as a motion to dismiss under ORCP 21 A." Appellants read this to mean that the express language in the anti-SLAPP statute that requires dismissal may be ignored and thus urge this Court to apply a liberal amendment standard under Rule 21A of Oregon's Rules of Civil Procedure and/or Rule 15(a) of the Federal Rules of Civil Procedure. Appellants rely on *Verizon Del., Inc. v. Covad Communications Co.*, 377 F.3d 1081 (9th Cir. 2004), and *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) for the proposition that the Court should use a liberal amendment policy instead of the harsh penalties under the anti-SLAPP statute.[9]

[11] Here, Appellants had already filed the first amended complaint as a matter of right and *Verizon* specifically held that a first amended complaint is subject to anti-SLAPP remedies. *See Verizon Del., Inc.* 377 F.3d at 1091 (holding that "if the offending claims remain in the first amended complaint, the anti-SLAPP remedies are available to defendants."). Moreover, in *United States v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-973 (9th Cir. 1999), the Ninth Circuit expressly held that California's anti-SLAPP statute may be applied in federal diversity suits and found that the application of the statute's special motion to strike does not "directly collide" with the Federal Rules. Thus, this Court holds that Oregon's anti-SLAPP statute, which requires entry of a judgment of dismissal without prejudice, does not directly conflict with the Federal Rules and Oregon's civil procedure rules.

### ii.   Appellants' First Request for Leave to Amend

Appellants did not file a formal motion for leave to amend

---

[9]Appellants also rely on *In re Bah*, 321 B.R. 41 (9th Cir. 2005), which holds that anti-SLAPP statutes may not be applied in federal question cases. *Id.* at 46. However, the instant case is a diversity case, therefore, *In re Bah* is inapplicable.

the first amended complaint but instead made the request within their objections to the Findings & Recommendation.[10] Appellants did not explain how they would cure the deficiencies in the first amended complaint but simply stated, "Given that there has been no activity in this case other than the special motion to strike, none of the defendants have filed an answer, no discovery has been had, and no other activity has occurred in this case, and given the fact that a dismissal under [Or. Rev. Stat.] § 31.150 must be 'without prejudice,' it only makes sense to permit plaintiffs to file amended claims." Moreover, Appellants did not include a proposed copy of the second amended complaint as required by District of Oregon Local Rule 15.1.[11]

[12] We find that the district court did not abuse its discretion when it denied Appellants' first request to amend the complaint because Appellants did not propose any new facts or legal theories for an amended complaint and therefore gave the Court no basis to allow an amendment.

### iii. Appellants' Second Request for Leave to Amend

Ten days after the first amended complaint was dismissed without prejudice, Appellants filed a "motion to amend order and judgment and for leave to file [a] second amended complaint" and an "amended motion for an order setting aside the judgment and to amend or correct the complaint." Appellants brought the motion pursuant to Fed. R. Civ. P. 15(a), 52(b)

---

[10]In the District of Oregon, the Magistrate may issue the Findings & Recommendation for a Special Motion to Strike under Or. Rev. Stat. § 31.150 and the District Court Judge reviews it pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).

[11]Local Rule 15.1 for the District of Oregon requires that any party filing or moving to file an amended pleading must: (1) reproduce the entire pleading; and (2) describe the changes made. Further, a copy of the proposed amended pleading must be attached as an exhibit to any motion for leave to file the amended pleading.

and 60(b). Appellants moved to "reopen the judgment" pursuant to Fed. R. Civ. P. 60(b)(6), which provides that the court may relieve a party from a final judgment for any "reason that justifies relief." Relief under Rule 60(b)(6) will not be granted unless the moving party is able to show both injury and circumstances beyond its control prevented timely action to protect its interest. At oral argument in front of the District Court, Appellees stipulated to bypass the Rule 60(b)(6) standards so the trial court could reach and resolve the merits of the motion to amend the complaint. The parties do not raise Rule 60(b) on appeal.

[13] We hold that the district court did not abuse its discretion when it denied Appellants' second request for leave to amend the complaint because the proposed amendment would have been futile. The proposed second amended complaint pled one cause of action for "intentional interference with economic relations and prospective economic advantage." The Supreme Court of Oregon has held that the elements of such a claim are: (1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage); (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and (6) damages. *Allen v. Hall*, 974 P.2d 199, 202 (1999). We have held that when a claim of tortious interference with business relationships is brought as a result of constitutionally-protected speech, the claim is subject to the same First Amendment requirements that govern actions for defamation. *Unelko Corp.*, 912 F.2d at 1058.

[14] Appellants' claim in the proposed second amended complaint is based on Martino's statements in segment three of the broadcast where he urged his listeners to not buy Polaris products. We hold that Martino's statements in segment three of the broadcast are nonactionable opinion pro-

tected by the First Amendment. Based on the "totality of the circumstances" test, Martino's reliance on the facts as recited by Feroglia was reasonable and the specific context of the radio broadcast indicates that Martino was expressing his opinion and not a factual assertion. Accordingly, Appellants cannot state a claim for intentional interference with economic relations and prospective economic advantage because protected speech cannot be the basis for such a claim. *Unelko Corp.*, 912 F.2d at 1058. Moreover, Appellants' allegations regarding Martino's "improper purpose" fail to state a cognizable claim for intentional interference, as, given the nature of Martino's consumer advocacy talk radio program, they show that he acted consistently with the "pursuit of [his] own business purposes as [he] saw them, " *Top Service Body Shop, Inc. v. Allstate Ins. Co.*, 582 P.2d 1365, 1372 (Or. 1978). As such, Appellants' proposed amendment to the complaint is futile.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

**AFFIRMED.**