Argued and submitted on March 11, at Clackamas High School, Clackamas, affirmed August 5, 2009

Bolek BRANT,
guardian ad litem for
Halina Brant-Zawadski,
*Plaintiff-Appellant,*

*v.*

TRI-COUNTY METROPOLITAN
TRANSIT DISTRICT OF OREGON,
dba Tri-Met,
*Defendant-Respondent.*

Multnomah County Circuit Court
061212831; A138202

213 P3d 869

J. Randolph Pickett argued the cause for appellant. With him on the briefs were Melissa A. Bobadilla and Pickett Dummigan Aguilar LLP.

Keith M. Garza argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Sercombe, Judge, and Norby, Judge pro tempore.

EDMONDS, P. J.

### EDMONDS, P. J.

Plaintiff,[1] a passenger on a bus owned and operated by Tri-County Metropolitan Transportation District of Oregon (Tri-Met), brought this negligence action against Tri-Met, alleging that she fell from her seat because of the bus driver's negligent operation of the bus. Tri-Met moved for summary judgment under ORCP 47 on plaintiff's claim, and the trial court granted the motion, reasoning that, although plaintiff presented evidence that the driver had braked suddenly and caused her to fall, she had not presented any evidence that the sudden braking was unreasonable under the circumstances. On appeal, plaintiff contends that a jury could infer that the driver was negligent based solely on the fact that she fell from her seat when the driver suddenly applied his brakes. We affirm.

On January 19, 2006, plaintiff was riding a Tri-Met bus in southwest Portland. During the trip, plaintiff fell from her seat and was injured. After she fell, the driver pulled the bus to the side of the road and obtained from plaintiff a signed "Driver's Exoneration Form" that stated that the driver and Tri-Met "were not at fault in connection with [the] accident."[2] However, a few days after the incident, plaintiff wrote a note in which she indicated that she had fallen because of the "jerky" drive on the bus. She subsequently filed this action, alleging that the bus driver's negligence caused her fall and resulting injuries.

Tri-Met, in turn, took plaintiff's deposition. During the deposition, plaintiff testified that she "was holding on to the handlebar, sitting in the senior seat on the opposite side of the bus where I fell. Suddenly the bus driver hit the brakes. I lost my grip and fell down on the floor." When asked whether the driver caused her to fall, plaintiff responded, "I think so, because he stopped so suddenly and so strong." When asked whether the driver "came to a complete stop and

---

[1] This action was initiated by Bolek Brant, guardian *ad litem* for Halina Brant-Zawadski. We, like the parties, use "plaintiff" to refer to Brant-Zawadski.

[2] The driver also obtained courtesy cards from two other passengers on the bus who stated that plaintiff lost her balance. One card stated, "A lady fell out of her chair, into the aisle. It wasn't the fault of the bus driver; she just couldn't keep her balance."

that's when you fell," plaintiff responded, "I think so." Plaintiff did not testify as to why the driver braked or the circumstances surrounding the braking.[3]

Tri-Met then moved for summary judgment on the ground that plaintiff was unable to prove that her fall was the result of the driver's negligence, as distinguished from the ordinary operation of the bus. In the absence of any evidence of the circumstances of the "braking," Tri-Met argued, the jury would be left to speculate whether the actions of the bus driver were "heroic, normal, negligent, or grossly negligent." In that regard, Tri-Met submitted, the facts were indistinguishable from *O'Dee v. Tri-County Metropolitan Trans. Dist.*, 212 Or App 456, 157 P3d 1272 (2007), a case in which we affirmed a grant of summary judgment against a plaintiff who was injured when a bus driver swerved and braked to avoid a bicyclist. In *O'Dee*, we concluded that the "[p]laintiff was unable to present any facts that by themselves or by their reasonable inferences could cause a reasonable juror to find the bus driver failed to meet the applicable standard of care." *Id.* at 463.

In response to the summary judgment motion, plaintiff offered her own deposition testimony, the deposition testimony of the driver (who recalled that the bus was traveling "at a pretty constant speed, but I don't recall what that was"), and the video of plaintiff's fall that was captured by Tri-Met cameras onboard the bus. According to plaintiff, the video (which we discuss in detail later in this opinion), shows "that the bus was traveling in a relatively straight direction with no obstacles encountered, that plaintiff was holding onto the railing in the senior seat as she described, and that she suddenly was thrown towards the aisle, and fell." In plaintiff's view, that evidence distinguishes this case from *O'Dee*, in which the driver swerved to avoid a bicyclist, because nothing in the bus driver's testimony or in the onboard video "would explain and justify the operator's sudden movement of the bus."

---

[3] To the extent that plaintiff's descriptions and recollections of the accident have shifted over time, Tri-Met emphasizes in its brief that it does not attribute any bad faith to plaintiff, who is in her 90s.

The trial court agreed with Tri-Met, concluding that our analysis in *O'Dee* was controlling:

> "Here Plaintiff has not presented any evidence as to why or in what way the alleged braking was unreasonable. In *O'Dee* the Court of Appeals stated: 'The unknown information is whether the bus driver's reaction to the bicyclist was reasonable.' *Id.* at 463. Plaintiff does not ask for the application of any *res ipsa loquitur* doctrine. That being the case, the unknown information is whether the bus driver's reaction to the situation he faced was reasonable. Plaintiff had the burden of producing evidence on that point and she has not done so."

The trial court then entered judgment against plaintiff, which resulted in this appeal.

On appeal, plaintiff renews the argument that she made below as to why the facts of this case are distinguishable from *O'Dee*. Specifically, plaintiff argues that, when she is given the benefit of all reasonable inferences that may be drawn from the fact that she was thrown from her seat by an *unexplained* braking, there is a genuine issue of material fact in this case that was not present in *O'Dee*.[4] Because it is the focus of the parties' arguments, we begin by discussing *O'Dee* in some detail.

In *O'Dee*, the plaintiff alleged that she was injured when the Tri-Met bus on which she was riding swerved twice and then braked abruptly. 212 Or App at 458. The facts, stated in the light most favorable to the plaintiff, were as follows:

> "On August 15, 2002, plaintiff boarded one of defendant's busses at 74th Avenue and Glisan in Portland, heading toward the city center. Plaintiff recognized the driver because she was a regular passenger and he was the regular driver. As the bus approached plaintiff's stop traveling approximately 10 to 15 miles per hour—a speed that the parties agree was appropriate in the circumstances—plaintiff rose in anticipation of deboarding. The bus suddenly swerved to the left toward oncoming traffic to avoid what

---

[4] Plaintiff also suggests that we should overrule *O'Dee* because it is inconsistent with the right to a jury trial under Article I, section 17, of the Oregon Constitution. We reject that argument without discussion.

was probably a bicyclist entering the street from the sidewalk; as a result, plaintiff was thrown to the floor. As she was picking herself up, the bus swerved again, this time to the right, and came to an abrupt stop. Plaintiff avoided a second fall, but stated that, when the bus swerved the second time, 'I felt like I was separated at the waist, and I felt like something tore in my thigh. And it really hurt.' "

*Id.* The trial court granted summary judgment on the ground that the plaintiff had failed to produce any evidence from which a jury could have concluded that the bus driver's reaction to someone "rolling" into his path (likely a bicyclist) was unreasonable under the circumstances. We agreed, explaining:

"[T]he bare fact that a bus driver who was approaching an intersection in a busy part of Portland did not anticipate a bicyclist early enough to avoid having to swerve does not mean that the driver was negligent. * * *

"Moreover, because there is no evidence about the location of the bicyclist, his or her speed, the existence of other distractions, the driver's condition, or any other relevant facts, a jury would have no way of knowing whether any reasonable driver would have been able to react in a manner that would not have caused plaintiff to fall. Without any such evidence, a finding that the driver failed to exercise the requisite degree of care would be pure speculation, and, as the Supreme Court has stated, '[i]t is * * * fundamental that negligence cannot be predicated upon mere conjecture, guesswork, or speculation.' *Simpson v. Hillman*, 163 Or 357, 363, 97 P2d 527 (1940)."

*Id.* at 461-62 (second omission in *O'Dee*). We further rejected the plaintiff's contention that the bus driver breached the applicable duty of care when he swerved "back to the right after the initial swerve to the left." *Id.* at 462. "Given the complete lack of evidence of where other vehicles were located, a juror would have no reason to believe that the driver acted negligently in swerving back to the right to return the bus to the lane in which it had been traveling." *Id.*

Central to our holding in *O'Dee* is the applicable legal standard under ORCP 47 C. We explained that, "since the summary judgment standard was amended in 1999, the nonmovant has the burden of offering admissible evidence to

create a genuine issue of material fact 'on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial.'" 212 Or App at 463 (quoting ORCP 47 C). "The onus of evidentiary default in this case therefore falls on plaintiff." *Id.* at 463. In other words,

> "[t]he unknown information is whether the bus driver's reaction to the bicyclist was reasonable. Plaintiff was unable to present any facts that by themselves or by their reasonable inferences could cause a reasonable juror to find the bus driver failed to meet the applicable standard of care. Under the current rules of civil procedure, plaintiff failed to defeat defendant's summary judgment motion."

*Id.* (emphasis added).

■■     With that background, we return to the issue before us—*i.e.*, whether plaintiff's evidence created a genuine issue of material fact as to whether the bus driver was negligent. As we explained in *O'Dee*, Tri-Met is a common carrier and therefore " 'owes its passengers the highest degree of care and skill practicable for it to exercise.' " 212 Or App at 461 (quoting *Simpson v. The Gray Line Co.*, 226 Or 71, 76, 358 P2d 516 (1961)). The question before us, then, is whether plaintiff presented sufficient evidence at the summary judgment stage for a juror to conclude that Tri-Met's driver failed to exercise the requisite degree of care.

Initially, plaintiff contends that her own testimony—"Suddenly the bus driver hit the brakes. I lost my grip and fell down on the floor"—is all that is necessary "to carry the day and avoid summary judgment." In her view, that testimony alone gives rise to an inference that the driver was not exercising the requisite degree of care, because there were "no circumstances that would exculpate the Tri-Met operator for the method of his driving which caused plaintiff to fall." According to plaintiff, she "is not required to prove a negative, and somehow rule out any non-negligent causes of the conduct at issue."

■■     Plaintiff understates her burden at the summary judgment stage. The question is not whether she *disproved* non-negligent causes for her injury. Rather, the question is whether plaintiff produced sufficient evidence to allow a jury to find that the driver was negligent. And, for reasons similar

to those expressed in *O'Dee*, the mere fact that plaintiff testified that the driver braked suddenly—so suddenly, in fact, that plaintiff fell from her seat—is not sufficient evidence for a jury to infer that the driver failed to meet the applicable standard of care. Sudden braking by a bus driver may or may not be negligent depending on the circumstances; in the absence of any evidence regarding the circumstances in which the driver braked suddenly, a juror has no basis—other than sheer speculation—to conclude that the driver's conduct was anything less than an exercise of the highest degree of care and skill practicable.[5] Thus, this case, like *O'Dee*, is not about the strength of any exculpating evidence regarding the driver's conduct; it is about whether plaintiff produced sufficient evidence to make her case that the driver's braking was negligent under the circumstances.

Alternatively, plaintiff argues that the driver's testimony and the video from the onboard camera, together with her testimony, give rise to the inference that the driver suddenly braked when the bus was traveling "in a relatively straight direction with no obstacles encountered[.]" The problem with that argument, however, is that neither the driver's testimony nor the onboard video gives rise to a reasonable inference that the driver braked suddenly, let alone negligently.

During his deposition, the bus driver was asked what the bus was doing at the time plaintiff fell: "Was it going straight? Was it turning? Was it accelerating? Braking? Do you remember?" He responded that, as he recalled, "the bus was on a slight turn to the left" and was traveling at a "pretty constant speed, but I don't recall what that was." His testimony is plainly inconsistent with plaintiff's theory that he was braking; no reasonable juror could rely on his testimony

---

[5] Under the doctrine of *res ipsa loquitur*, a plaintiff can establish negligence inferentially without identifying the specific negligent conduct of the defendant, provided that it can be " 'reasonably found by the jury that the accident which occurred * * * is of a kind which more probably than not would not have occurred in the absence of negligence on the part of the defendant[.]' " *McKee Electric Co. v. Carson Oil Co.*, 301 Or 339, 353, 723 P2d 288 (1986) (quoting *Watzig v. Tobin*, 292 Or 645, 649, 642 P2d 651 (1982)). However, plaintiff expressly disclaimed any reliance on that doctrine in the trial court and this court.

to infer that he suddenly applied the brakes when the bus was traveling at a constant speed and without obstacles.

The footage from the onboard camera is similarly inconsistent with plaintiff's theory that she was injured as the result of a sudden, negligent braking by the bus driver. The video footage shows four separate camera angles, each recording video at a rate of approximately one frame per second:[6] Two of the cameras are angled such that they show the passengers; one camera is angled toward the front door of the bus; and the fourth is aimed outside the bus, showing the road in front of the driver. At the time of plaintiff's fall, the bus appears to be traveling up a hill and turning slightly to the left. In addition to plaintiff, four other passengers are visible on the video from the onboard camera. At or shortly before plaintiff's fall, none of the passengers demonstrates any indication that the bus braked suddenly. From the video footage, plaintiff appears to lose her balance and fall backward as the bus ascends the hill—an image that does not support her testimony that she fell to the floor when the driver suddenly braked. In short, no reasonable juror could find from the evidence that, even if the driver applied his brakes, he did so negligently.

Thus, the record does not contain evidence from which a reasonable trier of fact could conclude that the bus driver failed to exercise the highest degree of skill and care practicable, and "[t]he onus of [that] evidentiary default * * * falls on plaintiff." *O'Dee*, 212 Or App at 463. We conclude for that reason that the trial court did not err in granting summary judgment in favor of Tri-Met.

Affirmed.

---

[6] At some points, the camera appears to record more than one frame per second.