Argued and submitted August 18, 2010, affirmed March 16, 2011

Barbara DEASON,
*Plaintiff-Appellant,*

*v.*

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF OREGON,
an Oregon corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
080203064; A141873

251 P3d 779

Mark Kramer argued the cause and filed the briefs for appellant.

Keith M. Garza argued the cause and filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

## ROSENBLUM, J.

Plaintiff, a passenger on a bus owned and operated by Tri-County Metropolitan Transportation District of Oregon (TriMet), brought this negligence action against TriMet after she fell and was injured when she stepped off the bus. She appeals from a general judgment in favor of TriMet following a jury trial and a jury verdict for TriMet. Plaintiff asserts that the trial court improperly instructed the jury that a common carrier is not ordinarily required to assist passengers in deboarding in the absence of special circumstances. According to plaintiff, the court's instruction "is contrary to Oregon law and impermissibly focused the jury on the issue of whether TriMet had a duty to assist deboarding passengers." We conclude that the instruction given by the court is consistent with the applicable standard of care for common carriers. Accordingly, we affirm.

On the morning of January 16, 2007, plaintiff, a 32-year-old woman in good health, was a passenger on a TriMet bus in downtown Portland. Although it was dry out when she started on her commute, by the time plaintiff boarded the bus it was snowing. In spite of the snow, plaintiff did not need assistance while getting on the bus, which was fairly full at the time she boarded.

During the drive, snow accumulated and began to cause traffic problems. As the bus was about to take a right turn, the operator observed another bus which was disabled in the snow at the intersection. At the instruction of a supervisor, the operator attempted to make the right turn anyway. However, the bus began to slide toward the disabled bus and was unable to make the turn. The bus continued to slide even when the driver put it in park and, for that reason, the bus was "ch[oc]ked"[1] to "hold [it] from sliding."

TriMet has an open door policy relating to disabled buses. That is, unless there are conditions that would make it dangerous to stay on the bus (*i.e.*, a fire onboard), passengers are encouraged to remain on board. But so long as there are no conditions that would make it dangerous to exit (*i.e.*, the

---

[1] That is, the wheels of the bus were immobilized.

bus is disabled on the freeway), passengers may nevertheless choose to get off of the bus. Absent extreme conditions, passengers are not forced to either get off or stay on the bus. Plaintiff contended that the passengers were instructed to get off of the bus in this case, an allegation that TriMet disputed. In any event, after the bus was stabilized many passengers began to exit, several of them telling the driver that they would "just walk it." Plaintiff was among those getting off of the bus.

The bus was a "low-floor" model, and could be "kneeled"—that is, the floor could be lowered below curb height. Before passengers alighted, the driver lowered the floor of the bus as far as it would go. There were several inches of ice and snow on the ground immediately outside, and plaintiff walked slowly, holding both handrails while getting off of the bus. She stepped off of the bus first with her right foot, then with her left, and then let go of the handrails. As plaintiff prepared to take another step, her left foot slipped out from under her and she fell on top of it, breaking her ankle in two places. The injury was serious; plaintiff's ankle had to be set with a metal plate and pins.

Plaintiff eventually filed an action against TriMet for damages, alleging that her injuries were the result of TriMet's negligence. Among other things, plaintiff contended that TriMet was negligent in failing to offer assistance to passengers after the bus became disabled and in failing to assist her in alighting from the bus. The case was tried to a jury and, prior to deliberations, the court instructed the jury as follows:

> "TriMet is a common carrier. Under Oregon law a common carrier owes its passengers the highest degree of care and skill practicable for it to exercise. Ordinarily, in the absence of circumstances showing that a passenger about to deboard requires assistance in order to deboard safely, a common carrier is not required to assist passengers in deboarding."

Prior to the giving of the jury instruction, plaintiff objected to the second sentence and elaborated that that portion of the instruction was "not consistent with any Oregon law" and

that it asked "the jury to look at a particular set of circumstances and * * * carve it out." However, the court determined that it would give the instruction and, after the jury was instructed, plaintiff excepted to the second sentence of the foregoing instruction. The jury ultimately returned a verdict finding that TriMet had not been negligent in any of the ways plaintiff claimed, and, accordingly, the court entered judgment for TriMet.

Plaintiff argues on appeal that the trial court erred in giving the second sentence of the instruction. That is, the trial court should not have instructed the jury that "[o]rdinarily, in the absence of circumstances showing that a passenger about to deboard requires assistance in order to deboard safely, a common carrier is not required to assist passengers in deboarding." According to plaintiff, that duty-to-assist instruction is not consistent with the standard of care applicable to common carriers in Oregon.[2] TriMet

---

[2] TriMet appears to contend that plaintiff's exception to the instruction was insufficient to satisfy the requirements of ORCP 59 H. ORCP 59 H(1) provides,

"[a] party may not obtain review on appeal of an asserted error by a trial court in * * * giving * * * an instruction to a jury unless the party who seeks to appeal identified the asserted error to the trial court and made a notation of exception immediately after the court instructed the jury."

ORCP 59 H(2) further provides that a "party shall state with particularity any point of exception to the trial judge."

TriMet states that an assignment of error with respect "to the trial court's decision to instruct the jury with respect to a common carrier's obligation to assist deboarding passengers" was "probably * * * preserved." Nonetheless, it goes on to suggest that, because plaintiff's exception to the instruction was "perfunctory," plaintiff may not have stated her exception with sufficient particularity to satisfy ORCP 59 H. *See Snider v. Production Chemical Manufacturing, Inc.*, 221 Or App 593, 603, 191 P3d 691 (2008), *aff'd*, 348 Or 257, 230 P3d 1 (2010) (party "did not preserve its claim that the court erred in failing to give" requested instruction when it did not "take an exception on the record" and did not "cogently present for the trial court's consideration the alleged deficiencies in the instructions"). As noted, before the jury was instructed in this case, the court informed the parties that it intended to give the jury the duty-to-assist instruction. Plaintiff asked to be heard on the issue and made extensive argument to the court.

After hearing argument, the court noted plaintiff's objection for the record but stated that it was "going to include the instruction as written." Thereafter, the court gave the duty-to-assist instruction. After the jury was charged, plaintiff took exception "to the special—or the addendum or the second part of the Special Duty instruction for the reasons that I've already advanced to the Court, and I do think it was crucially important." Plaintiff's exception to the instruction after the jury was charged, that referred the court to the extensive argument on the record, was clearly sufficient to satisfy the requirements of ORCP 59 H.

asserts that the instruction correctly stated the law and was proper to give to the jury.

█ As a common carrier, TriMet "owes its passengers the highest degree of care and skill practicable for it to exercise." *Brant v. Tri-Met*, 230 Or App 97, 103, 213 P3d 869 (2009) (internal quotations marks omitted); *see also Simpson v. The Gray Line Co.*, 226 Or 71, 76, 358 P3d 516 (1961) ("The jury was correctly instructed in the case at bar that a common carrier owes its passengers the highest degree of care and skill practicable for it to exercise. Prosser, Torts 147, § 33[.]"). Although the court instructed the jury of that duty, plaintiff asserts that the duty-to-assist instruction was improper because it was an incorrect statement of the law and, even if it was a correct statement, the court had a duty to define and explain the circumstances that would require the carrier to render assistance to an alighting passenger. We disagree with plaintiff on both points.

█ First, the trial court's duty-to-assist instruction was a correct statement of law. Generally, a common carrier is under no duty to assist a passenger in alighting unless the circumstances demonstrate that such assistance is needed. *Adams v. Portland Ry., L. & P. Co.*, 87 Or 602, 607-08, 171 P 219 (1918); *see Carriers*, 13 CJS 526 § 557 (2005) ("In the absence of any apparent necessity for personal assistance to passengers boarding or alighting, [a common] carrier is not required to furnish such assistance."); *e.g., Crenshaw v. Doubletree Corp.*, 81 Ark App 157, 164, 98 SW3d 836, 841 (2003) ("In the absence of circumstances showing that a passenger about to board, or alight from, the vehicle of a carrier requires assistance, there is as a general rule no duty personally to assist him, particularly in the absence of any request for assistance[.]"); *Yu v. New York, N. H. & H. R. Co.*, 145 Conn 451, 454, 144 A2d 56, 58 (1958) (no duty to assist a passenger to alight where the circumstances are such that assistance is neither requested nor apparently required); *Beaudet v. Boston & M. R. R.*, 101 NH 4, 5, 131 A2d 65, 67 (1957) (common carrier is under no duty to furnish assistance to a passenger alighting, in the absence of any apparent necessity for such assistance); *King v. Vets Cab, Inc.*, 179 Kan 379, 383, 295 P2d 605, 608 (1956) (In the exercise of the highest degree of care, circumstances of the particular case dictate whether

or not a common carrier must assist a passenger in alighting.); *Ken-Ten Coach Co. v. Davis*, 289 Ky 329, 158 SW2d 624, 626 (1942) (In the absence of circumstances showing that a passenger about to alight from the vehicle of a carrier requires assistance, there is generally no duty to assist him.). Thus, whether or not a carrier must provide assistance depends on all the surrounding circumstances. If circumstances, of whatever kind, demonstrate that the passenger in question needs assistance in order to safely alight, the carrier must provide that assistance. And in the absence of such circumstances, there is no duty to assist a deboarding passenger. The trial court's instruction correctly stated that rule.

■ The instruction did not, as plaintiff asserts, dilute the high standard of care applicable to common carriers. As noted, a common carrier owes its passengers the highest care and skill practicable. Because it incorporates surrounding circumstances, the duty to assist instruction is fully consistent with that standard of care. That is, it provides that there is generally no duty to assist *unless the circumstances demonstrate that such assistance is required.* Where the circumstances demonstrate that assistance *is* required, that general rule does not apply. Certainly even the highest standard of care does not require that assistance be rendered to passengers in the absence of an indication that such assistance is needed. In sum, we are persuaded that the trial court's jury instruction correctly described a common carrier's duty to assist passengers alighting from a vehicle.

Plaintiff also contends that the instruction was improper because the trial court did not adequately explain its parameters. That is, according to plaintiff, the court "was obliged to define the 'circumstances' under which a common carrier would be required to assist passengers in deboarding." In plaintiff's view, the instruction required the jury to speculate, for example, about whether "such *circumstances* include only circumstances germane to the individual * * * or include external circumstances?" (Emphasis in original.)[3] Again, we are not persuaded.

---

[3] We note that plaintiff's argument on this issue does not appear to be entirely consistent. At some points, she contends that the trial court "was obliged to define

██     The trial court had no obligation to define the circumstances that show that an alighting passenger requires assistance and would give rise to a duty to assist on the part of the common carrier. The court properly left it open for the jury to consider any circumstances that it viewed as pertinent to that issue. The instruction was broad in scope, stating that there was no duty to assist unless "circumstances show[ ] that a passenger about to deboard requires assistance in order to deboard safely[.]" In light of that breadth, the instruction would properly permit the jury to consider *any* surrounding circumstances—whether those pertained only to the individual passenger in question or to surrounding environment or other external circumstances—that might show that a passenger needed assistance getting off the bus. All things considered, the trial court did not err when it gave the duty-to-assist instruction to the jury in this case.

Affirmed.

---

the 'circumstances' under which a common carrier would be required to assist passengers in deboarding." At others she states that "it would be virtually impossible to rationally fashion appropriate qualifying language" and the instruction "could not have been cured by enumerating a host of exceptions to the *'general rule.'* " (Emphasis in original.) In any event, we are not persuaded by plaintiff's contentions.