Jon FRAKES,
Personal Representative of the
Estate of Raymond J. Frakes, Deceased,
*Plaintiff-Respondent,*
*Cross-Appellant,*

*v.*

Tim NAY,
in his capacity as successor trustee of the
Saling Family Revocable Trust,
and individually,
*Defendant-Appellant,*
*Cross-Respondent.*

Multnomah County Circuit Court
050707686; A138032

295 P3d 94

Matthew Whitman argued the cause for appellant Tim Nay in his capacity as successor trustee of the Saling Family Revocable Trust. With him on the brief were James R. Cartwright and Cartwright and Associates.

Lee Aronson argued the cause for cross-respondent Tim Nay individually. With him on the brief were Michael J. Fearl, and Schulte, Anderson, Downes, Aronson, & Bittner, P.C. With them on the reply brief were Matthew Whitman and Cartwright, Whitman, Baer, P.C.

Andrew T. Reilly argued the cause for respondent - cross-appellant. With him on the briefs were Alexander A. Wheatley and Black Helterline LLP.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

This case arises from estate planning that Nay, an attorney, performed for Carol and Velma Saling, and from the administration of the resulting Saling Family Trust. After the Salings died, Raymond Frakes, one of the beneficiaries of the trust, filed an action against Nay, who also served as trustee, for inspection of Nay's estate-planning files, for an accounting, and for reimbursement of expenses that Frakes had incurred on behalf of Velma Saling. Frakes eventually added claims against Nay individually based on his conduct as an attorney, including a breach of contract claim, a malpractice claim, and a claim for intentional interference with Frakes's expectancy interest.

Nay, in his capacity as trustee, filed a counterclaim against Frakes by which he sought to strip Frakes of his status as a beneficiary of the trust. Nay alleged that Frakes, by asserting breach of contract and tort claims against him individually, had violated a "no-contest" clause of the trust. As a consequence, Nay argued, Frakes was no longer a beneficiary of the trust under its terms and should be required to repay $500,000 that had been distributed to him as a beneficiary, plus interest on that amount, and forfeit the remaining $500,000 that he was otherwise owed.

Generally speaking, Frakes prevailed on claims against Nay as trustee but not as to claims against him individually. Frakes's claims against Nay as trustee were tried to the court, and the trial court ruled that Frakes was entitled to inspect Nay's estate-planning file and to an accounting of trust assets, which Nay was required to prepare. The court also ruled that Frakes's claims against Nay as an attorney had not triggered the no-contest clause, and those claims were tried to a jury. The jury found that Velma Saling had testamentary capacity when she amended the trust in 1996 and was not unduly influenced by Carol Saling or Nay, and so returned a verdict in favor of Nay on each of the claims against him individually. The court then entered judgment accordingly, against Nay as the trustee but in his favor as an individual.

Nay now appears in dual roles on appeal as well: As the trustee ("Nay-as-trustee"), he is the appellant, challenging the trial court's rulings on Frakes's claims for inspection of the estate-planning file, an accounting, and reimbursement and on his counterclaim based on the no-contest provision of the trust. As an individual ("Nay-as-attorney"), he is the cross-respondent, seeking to uphold the judgment in his favor on Frakes's breach of contract and tort claims. For the reasons that follow, we affirm on appeal and reverse and remand on cross-appeal.

## I.  BACKGROUND

In 1990, Nay prepared a revocable living trust for Velma Saling and her husband, Carol. In 1996, Nay prepared an Amended and Restated Trust. The 1996 trust designated various beneficiaries who would receive distributions upon the death of the first spouse and then again upon the death of the second spouse, with the residue of the trust assets distributed to the Saling Family Foundation, a charitable foundation established by Carol. Raymond Frakes, who was Velma's nephew, was one of the beneficiaries of the 1996 trust.

In October 2002, Carol died and Frakes traveled to Portland for the funeral. Frakes stayed at the Saling home, where he had spent his childhood, and on October 30, 2002, an attorney from Nay's office hand-delivered to Frakes copies of Carol's estate-planning documents. Frakes hired his own attorney at that point, and he gave his attorney copies of the estate-planning documents that he had received from Nay's office, as well as other estate-planning documents that Frakes had taken from the Saling home after Carol's death.

Velma died in 2004, and thereafter Frakes requested an accounting from Nay, who was serving as successor trustee of the 1996 trust. Frakes also wanted to inspect Nay's estate-planning file for the Salings. Nay ultimately refused to provide either the accounting or an opportunity to review the estate-planning file. As for the file, Nay objected on the basis of attorney-client privilege. With regard to the request for an accounting, Nay instead tendered a final distribution of the trust assets and took the position that, after the distribution, Frakes would be fully satisfied as a beneficiary.

Frakes refused to accept the conditions of the tender and, in 2005, initiated this action against Nay-as-trustee. Frakes initially brought two claims, one seeking disclosure of Nay's estate-planning file and the other requesting reimbursement of certain expenses that Frakes claimed to have incurred while acting as Velma's health care agent. After various pleading motions and related efforts to replead, Frakes filed his Fifth Amended Complaint and Petition, which included six claims for relief: (1) a reimbursement claim for "$12,728.62 in expenses advanced and incurred by [Frakes] during the last year or so of Velma Saling's life"; (2) a petition for an itemization of trust assets pursuant to *former* ORS 128.125 (2003), *repealed by* Or Laws 2005, ch 348, § 128;[1] (3) a claim for equitable relief under *former* ORS 128.135 (2003), *repealed by* Or Laws 2005, ch 348, § 128, seeking production of estate-planning materials in Nay's possession, preparation of an accounting of trust assets, and removal of Nay as trustee; (4) a breach of contract claim against Nay individually, on the theory that Frakes was an intended beneficiary of the legal work that Nay performed for the Salings; (5) a "misconduct/malpractice" claim against Nay individually, based on a similar theory; and (6) a claim against Nay individually for intentional interference with Frakes's prospective inheritance.

In his individual capacity, Nay simply filed an answer to the breach of contract and tort claims against him. As trustee, however, Nay not only answered but also asserted counterclaims against Frakes. In one of those counterclaims, Nay-as-trustee alleged that "the Saling Family Trust contains an *in terrorem* provision [also known as a no-contest provision], by which any beneficiary seeking a court adjudication with respect to the validity of the Trust forfeits his distributive share under the Trust." He further alleged that Frakes,

"in this lawsuit, has sought to have the court accept and act on his allegations that Velma Saling did not sign the 1996 Restatement of the Trust, and that neither Velma nor Carol Saling knowingly signed a document containing

---

[1] The provisions of ORS chapter 128 that are relevant to this appeal have been since repealed or renumbered. All references to ORS chapter 128 are to the versions of those statutes in effect in 2004.

an *in terrorem* clause. Any of these statements constitute challenges to the validity of the Trust. His entire distributive share is therefore forfeit pursuant to the terms of the *in terrorem* clause."

Nay-as-trustee asked the court to declare that Frakes had violated the no-contest clause; to order Frakes to disgorge $500,000, plus interest, that Frakes had received upon the death of Carol; and to return an additional $500,000 deposit, representing the final distribution to Frakes, which Nay-as-trustee had paid into court pending resolution of the case.

One of the most contentious pretrial issues, which arose in motions to strike, in motions for partial summary judgment, and in the context of a discovery dispute, was whether Nay was required to produce his estate-planning file for Frakes's inspection. As previously described, one of Frakes's claims against Nay-as-trustee sought that relief—production of any estate-planning documents in Nay's possession. During discovery, Frakes also sought the estate-planning file as part of a request for the production of documents. Nay, in his capacities as trustee and as attorney, repeatedly argued that the estate-planning file was subject to the attorney-client privilege, and that Nay, in his capacity as attorney, was entitled to assert that privilege on behalf of his deceased clients, the Salings. The trial court disagreed, however, and granted Frakes's motion to compel Nay to produce the estate-planning file during discovery.

Another significant point of dispute was whether, for purposes of submission to the jury, Frakes's claims against Nay-as-attorney were best characterized as undue influence claims and challenges to Velma's testamentary capacity. Nay, both individually and as trustee, argued (consistently with his theory that Frakes was contesting the validity of the trust itself) that Frakes's breach of contract and tort claims hinged on whether Velma lacked testamentary capacity and whether Nay and Carol had unduly influenced Velma. Frakes, meanwhile, argued that his claims were solely directed at Nay's conduct as an attorney, that he was not required to prove either undue influence or Velma's lack of testamentary capacity to prevail on his claims, and that the trial court should not inject

those questions into the instructions and verdict form. The trial court, however, agreed with Nay's characterization of the issues and instructed the jury at length "in regards to what 'undue influence means.'" The trial court also accepted Nay's special verdict form, which required the jury to address two questions—one concerning undue influence and another concerning Velma's testamentary capacity—before it could consider Frakes's breach of contract, negligence, and intentional interference claims. The special verdict began as follows:

"1.   Did Velma Saling lack testamentary capacity on March 19, 1996, at the moment she signed the 1996 Trust?

"___   YES

"___   NO

"2.   Did Velma Saling sign the 1996 Trust as a result of undue influence exerted by Tim Nay and Carol Saling?

"___   YES

"___   NO

"At least nine (9) of you must agree on the answers to questions 1 and 2. If your answers to question 1 and question 2 are 'NO,' STOP. Your verdict is for defendant. If your answer to either question 1 or 2 is YES, proceed to question 3."

The jury ultimately answered "NO" to questions 1 and 2, and thus returned a verdict for Nay on each of the claims against him as an attorney.

The remaining claims and counterclaims involving Nay-as-trustee were resolved by the trial court 12 days after the jury trial. Although the trial court, for purposes of the verdict form and jury instructions, had agreed with Nay that the claims against him as an attorney involved Velma's testamentary capacity and whether she was unduly influenced, the court nonetheless rejected Nay's related contention, asserted in his capacity as trustee, that Frakes was therefore in violation of the no-contest provision of the trust. According to Nay-as-trustee, the allegations in the Fifth Amended Complaint, along with the verdict form submitted to the jury, had necessarily put the validity of the

trust at issue and, for that reason, triggered its no-contest provision. The trial court disagreed, ruling that Frakes "didn't directly challenge the validity of the trust" but instead "maintained all along he was going after Mr. Nay. Not after the trust, not after its assets, but Mr. Nay for his conduct." Accordingly, the court ruled in Frakes's favor on the counterclaims by Nay-as-trustee.

All that remained, then, were Frakes's claims against Nay-as-trustee—specifically, his second claim for relief, which sought an itemization of trust transactions and assets, and his third claim for relief, which sought remedies pursuant to *former* ORS 128.135, including a decree that Nay provide copies of all estate-planning documents. (Frakes had previously dismissed his first claim against Nay-as-trustee—the claim for reimbursement for Frakes's expenditures—on the first day of trial.) On the second and third claims for relief, the trial court sided with Frakes, ruling that he was entitled to an accounting and, as earlier resolved in the context of a discovery motion, to inspect Nay's estate-planning file.

The court subsequently entered a judgment that memorialized the jury's verdict in favor of Nay-as-attorney (Frakes's fourth, fifth, and sixth claims for relief), and the court's subsequent rulings against Nay-as-trustee (on his counterclaim and on Frakes's second and third claims for relief). The judgment stated that Frakes had voluntarily dismissed his first claim for relief, but did not designate a prevailing party as to that claim. The judgment explicitly deferred the matter of attorney fees to a later date, including any attorney fee request on Frakes's first claim for relief.[2]

Frakes then submitted an attorney fee statement seeking fees as the prevailing party on his second and third claims for relief. Regarding his second claim for relief (for an accounting), Frakes argued that Nay-as-trustee had no objectively reasonable basis for refusing to provide the

---

[2] The judgment stated that "[Frakes's] claim in his Second Claim for Relief for attorney fees pursuant to ORS 20.105, [Frakes's] claim in his Third Claim for Relief for attorney fees pursuant to ORS 128.135, and Defendant Tim Nay as trustee's claim for attorney fees pursuant to ORS 20.105 on Plaintiff's First Claim for Relief, shall be determined pursuant to ORCP 68."

requested accounting; as to his third claim (production of estate-planning documents), Frakes sought attorney fees pursuant to *former* ORS 128.155, which states, "If a beneficiary [who petitions the court under *former* ORS 128.135] is successful, the court may tax the costs and disbursements of the proceeding, including any appeal therein, and reasonable attorney fees against the trust estate or the trustee individually." Nay-as-trustee objected to the request on the grounds, among others, that his defense to the second claim for relief—namely, that Frakes had lost "standing" as a beneficiary by violating the no-contest provision and was not entitled to an accounting—was objectively reasonable, and that Frakes had pursued the third claim for relief simply as a discovery vehicle to adduce support for his claims against Nay-as-attorney.

The trial court gave Frakes a discretionary award of attorney fees on his third claim for relief pursuant to *former* ORS 128.155, but concluded that Nay-as-trustee had mounted an objectively reasonable defense to the request for an accounting. The court entered a supplemental judgment that awarded Frakes attorney fees in the amount of $50,000 against Nay-as-trustee.

Nay-as-trustee now appeals the trial court's general judgment as to the claims against him and as to his counterclaim against Frakes; he also appeals the supplemental judgment that awarded attorney fees to Frakes. Meanwhile, Frakes cross-appeals that supplemental judgment, claiming he was entitled to a larger fee award against Nay-as-trustee, and also cross-appeals the general judgment that adversely resolves his claims against Nay-as-attorney. The cross-appeal of the general judgment, in turn, triggered cross-assignments of error by Nay-as-attorney, in which he advances alternative bases for reaching the same outcome.

Any discussion of this case is convoluted by the dual capacity in which Nay appears as attorney and as trustee, the parties' alternating roles as appellants and respondents, and the overlap between the issues as to parties and capacities. In discussing the various assignments of error before us, we will simply proceed in the order in which they

have been briefed, beginning with the assignments of error on appeal by Nay-as-trustee, then cross-appeal by Frakes, and finally cross-assignment by Nay-as-attorney. As we will sort through below, we affirm the court's rulings as to the claims against Nay-as-trustee. We conclude, however, that the trial court submitted the tort claims against Nay-as-attorney to the jury on an erroneous verdict form, and we therefore reverse the general judgment as to those claims. As for attorney fees, we affirm the trial court's discretionary award of attorney fees to Frakes but remand the supplemental judgment for the court to better explain the way in which it calculated the amount of that award.

## II.  APPEAL BY NAY-AS-TRUSTEE

### A.  *No-Contest Provision*

In his first assignment of error on appeal, Nay-as-trustee argues that Frakes's claims against Nay-as-attorney triggered the no-contest provision of the Saling Family Trust, and that the trial court erred in ruling otherwise. The no-contest provision of the trust states,

> "No-Contest Clause. If any beneficiary under this trust, singly or in conjunction with any other person or persons, contests in any court the validity of this trust or of deceased Trustor's or beneficiary's last will or seeks to obtain an adjudication in any proceeding in any court of this trust, or any of its provisions, or of such will, or any of its provisions, then that person's right to take any interest given by this trust shall be determined as it would have been determined if the person had predeceased the execution of this trust without surviving issue. The provisions of this paragraph shall not apply to any disclaimer by any person of any benefit under this trust or under any will.

> "The Trustee is hereby authorized to defend, at the expense of the trust estate, any contest or other attack of any nature on this trust or any of its provisions."

According to Nay-as-trustee, there is no dispute that, in the claims against Nay individually, Frakes alleged and argued that Velma lacked testamentary capacity and that Carol, along with Nay, unduly influenced her to amend the trust in 1996. "Had the jury accepted Frakes's allegations of undue influence or lack of capacity,"

Nay-as-trustee argues, "the conclusion that the Trust was invalid would have been inescapable."

Frakes, on the other hand, argues that the no-contest clause does not apply to claims in which the "only person or entity who stood to lose anything * * * was Nay-as-attorney"; alternatively, he argues that the no-contest provision, if read as broadly as Nay-as-trustee claims, would be void against public policy and unenforceable. We agree with Frakes's former argument and therefore do not address the latter.

In construing the provisions of a trust, "our goal is to determine and give effect to the intent of the trustor, if possible. ORS 42.240 ('In the construction of an instrument the intention of the parties is to be pursued if possible[.]')." *Schmidt v. Hart*, 237 Or App 412, 422, 241 P3d 329 (2010), *rev den*, 350 Or 130 (2011); *see also Howard v. Howard*, 211 Or App 557, 562, 156 P3d 89 (2007).[3] Our role is to "ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted * * *." ORS 42.230.

By its express terms, the trust divests any beneficiary who "contests in any court the validity of this trust" or "seeks to obtain an adjudication in any proceeding in any court of this trust, or any of its provisions * * *." According to Nay-as-trustee, the word "contest" has a well-established meaning in this context:

> "To controvert, litigate, call in question, challenge. * * * As used in a no-contest clause in a will, means any legal proceedings designed to thwart testator's wishes."

*Black's Law Dictionary* 320 (6th ed 1990).

Nay-as-trustee focuses only on the first part of that quoted definition, arguing that the claims against him as attorney, as evidenced by the verdict form, "'controverted,

---

[3] Because the notice of appeal was filed before June 4, 2009, we "review[] *de novo* the evidence underlying a final order interpreting a trust instrument and declaring the rights of beneficiaries." *Goodwill Industries v. U.S. Bank*, 196 Or App 556, 559, 103 P3d 1165 (2004); Or Laws 2009, ch 231, §§ 2, 3 (amending ORS 19.415(3) such that, when the notice of appeal is filed after June 4, 2009, *de novo* review is discretionary with the Court of Appeals). The parties, however, have not identified any contested facts relevant to the meaning of the provision.

litigated, called in question, and challenged' the validity of this Trust." But the latter, and more apt, part of the Black's Law definition, which refers specifically to no-contest clauses, cuts the other direction: "As used in a no-contest clause in a will," contest "means *any legal proceedings designed to thwart testator's wishes*." *Id.* (Emphasis added.) By that definition, an action against Nay-as-attorney does not "contest" the trust. A verdict against Nay in his individual capacity would not "thwart [the] testator's wishes" at all, because a money award would be satisfied by Nay individually and would not affect the trust assets or its administration.[4]

The last paragraph of the no-contest clause, which authorizes the trustee to "defend, at the expense of the trust estate, any contest or other attack of any nature on this trust or any of its provisions," suggests that the no-contest clause was directed at claims against which the trustee would defend. Indeed, viewing the trust agreement as a whole, there is no indication that the Salings anticipated or sought to protect Nay personally from any claims against him as an attorney, regardless of whether those claims might involve some of the same underlying factual determinations as a challenge to the trust itself or any of its provisions.

But even assuming that there exists some ambiguity about the scope of the no-contest clause, we still would not presume that the Salings intended a more sweeping effect of that clause than its text provides.[5] It is commonly recognized that no-contest provisions, although valid and enforceable,[6]

---

[4] Nay-as-trustee contends that, although a judgment on the claims against Nay-as-attorney would not have been satisfied with trust assets, an adverse judgment would nonetheless bar Frakes from "re-litigating the issues of capacity and undue influence in a formal trust contest." We are not persuaded that issue preclusion, even if applicable, would decide the question before us regarding the meaning of the no-contest clause.

[5] Nay-as-trustee submits that the broad language of the no-contest provision used by the Salings—"seeks to obtain an adjudication in any proceeding in any court"—demonstrates that the provision was not limited to declaratory judgment actions that directly challenge the trust itself but extends to indirect attacks on the trust. That, however, still does not answer the real question: whether Frakes's claims, directly or indirectly, actually seek an adjudication "of this trust, or any of its provisions."

[6] At the time the trust document was drafted, *former* ORS 128.255, *repealed by* Or Laws 2005, ch 348, § 128, provided that "an in terrorem clause in a trust is valid and enforceable" except in certain circumstances identified in the statute. As previously noted, 254 Or App at 246, this case involves the interpretation of the

are strictly construed like other forfeiture provisions and are not extended beyond their express terms. *Johnson v. Greenelsh*, 47 Cal 4th 598, 604, 100 Cal Rptr 3d 622, 217 P3d 1194 (Cal 2009) ("Although no contest clauses are enforceable and favored by the public policies of discouraging litigation and preserving the transferor's intent, they are nevertheless strictly construed and may not be extended beyond their plainly intended function."); *Commonwealth Bank & Trust Co. v. Young*, 361 SW3d 344, 352 (Ky Ct App 2012) (although generally enforceable, no-contest provisions in trust documents are "strictly construed and are not extended beyond their express terms"); *Ruby v. Ruby*, 973 NE2d 361, 369 (Ill App 2012) ("Even where [no-contest clauses] are held valid, though, conditions against contests are so disfavored by the courts that they are construed very strictly. This view is guided by the well-established rule that equity does not favor forfeitures, and in construing conditions, both precedent and subsequent, a reasonable construction must be given in favor of the beneficiary." (Citation omitted.)); *cf. Farmer v. Groves*, 276 Or 563, 567, 555 P2d 1252 (1976) ("Courts do not favor forfeitures and such contract provisions are liberally construed against a forfeiture.").

In sum, Nay-as-trustee has failed to demonstrate on appeal that the no-contest provision was intended to apply to claims against him individually. We therefore reject his first assignment of error.

B. *Compelled Disclosure of Nay's Estate-Planning File*

In his second assignment of error, Nay-as-trustee challenges the trial court's pretrial ruling that compelled him to produce his estate-planning file. He advances various arguments to the effect that the file included material that was subject to the lawyer-client privilege under OEC 503, and as to why certain exceptions to that privilege are inapplicable. We conclude that Nay has not demonstrated on appeal that the trial court's discovery ruling was erroneous—his burden as the appellant. *See Farhang v. Kariminaser*, 232 Or App 353, 356, 222 P3d 712 (2009)

---

language of the trust document, and we need not address the scope and effect of the statute.

("[T]he appellant *** has the burden to demonstrate that error; it is not the respondent's burden to show that the trial court did not err.").

The lawyer-client privilege protects "confidential communications," not an attorney's files generally. Although Nay invoked a blanket privilege with regard to the estate-planning file, Frakes points out that at least some of the documents in the file were not privileged. OEC 503(4)(d) states that the lawyer-client privilege does not apply "[a]s to a communication relevant to an issue concerning an attested document to which the lawyer is an attesting witness[.]" Nay served as the attesting witness to Velma and Carol Saling's execution of both the 1990 trust and the 1996 restatement of that trust, as well as other documents that round out Velma's estate plan (such as the Assignment of Furniture, Furnishings, and Personal Effects to the Saling Trust, and the Last Will of Velma E. Saling). Nay-as-trustee offers no argument as to why that particular exception does not apply to at least some of the documents in the estate-planning file, nor does he identify the contents of the file in a way that would allow us to assess on appeal whether the trial court's discovery ruling was error. For that reason, we reject his second assignment of error without further discussion.[7]

C. *Prevailing Party Designation*

In his third assignment of error, Nay-as-trustee argues that the trial court erred "in ruling that Nay was not the prevailing party on Frakes's 'reimbursement' claim, when Frakes orally dismissed that claim on the first day of trial." However, the portions of the record to which Nay-as-trustee directs us, which involve a colloquy regarding the form of judgment, do not demonstrate that the court

---

[7] Nay-as-trustee also argues that the trial court denied him the right to his trial on the merits by compelling him "to disclose his file to Frakes in advance of trial, though that disclosure was the substantive relief he sought in his Third Claim for Relief." We reject that argument without discussion. Nay-as-trustee further argues that the court had no authority to order the production of the estate-planning file as part of a request for relief under ORS 128.135. That argument appears to pertain to the court's separate ruling on the merits of the claim, as opposed to the earlier discovery order compelling production, and would therefore require a separate assignment of error. In any event, we reject that argument, too, without discussion.

actually made such a ruling, nor does the language of the judgment itself. Rather, the court appears to have expressly declined to determine a prevailing party on the dismissed claim at that point, instead leaving the issue to be resolved at an ORCP 68 hearing:

> "[NAY-AS-TRUSTEE'S COUNSEL]: Your honor, all the argument about who's the prevailing party on this and who's the prevailing party on that, I think all of that plays at the Rule 68 hearing.
>
> "THE COURT: I do, too. So I'm going to take out your language [regarding Nay as the prevailing party]. It's just one line. Okay. That resolves that."

Later, the court clarified that it was not making a ruling on entitlement to attorney fees, but was deferring that issue as to all claims:

> "THE COURT: Does anyone have any—I'm not making a ruling about whether you're going to get them [costs, disbursements, and attorney fees] or whether you're going to get them or whether you really do have a right to seek them, but does anyone have a problem saying that you have a—each side can seek them, and then we'll argue later whether it's appropriate or not?
>
> "[NAY-AS-TRUSTEE'S COUNSEL]: I think everybody understands that's going to happen.
>
> "[FRAKES'S COUNSEL]: Just so we understand, though, we're talking about what you guys [Nay's counsel] are seeking *and you're talking about the first claim for relief only*.
>
> "THE COURT: Yeah. They're not going to be able to say you—they're not going to be able to object to your submission for attorney's fees based on the grounds that I didn't allow it, and vice versa. But that doesn't—you know, they still may argue, and you may argue against them, that they're not entitled under law to make that application."

(Emphasis added.) As far as the judgment itself, it simply provides that Frakes "voluntarily dismissed * * * his First Claim for Relief in its entirety" and that "Defendant Tim Nay as trustee's claim for attorney fees pursuant to ORS 20.105

on Plaintiff's First Claim for Relief[] shall be determined pursuant to ORCP 68."[8]

If the court ever ruled, as Nay-as-trustee now claims, that "Nay was not the prevailing party on Frakes's 'reimbursement' claim," it is not evident from the briefs. We decline to search this voluminous trial court record to determine whether and when the asserted error occurred.[9] *See* ORAP 5.45(4)(a)(ii) ("Each assignment of error must set out pertinent quotations of the record where the question or issue was raised and the challenged ruling was made, together with reference to the pages of the transcript or other parts of the record quoted or to the excerpt of record if the material quoted is set out in the excerpt of record. When the parts of the record relied on under this clause are lengthy, they shall be included in the excerpt of record instead of the body of the brief."); ORAP 5.45(4)(c) ("The court may decline to consider any assignment of error that requires the court to search the record to find the error or to determine if the error properly was raised and preserved.").

D. *Attorney Fee Award under ORS 128.135*

In his fourth assignment of error, Nay-as-trustee argues that the trial court abused its discretion in awarding attorney fees to Frakes on his third claim for relief (the request for Nay's estate-planning file). According to Nay-as-trustee, "[t]he trial court abused its discretion in awarding any fees on that claim, because that claim was purely a discovery vehicle for the tort claims, which carried no right to fees at all, and because Frakes's pursuit of that claim conferred no benefit on anyone but himself."

---

[8] *See Interstate Roofing, Inc. v. Springville Corp.*, 347 Or 144, 160, 218 P3d 113 (2009) ("No statute or rule requires a trial court to designate a prevailing party at the time it enters a judgment. To the contrary, the statutory scheme provides that attorney fees may be awarded by a supplemental judgment, thus implicitly contemplating that a prevailing party designation can be made after entry of a limited or general judgment.").

[9] Although the trial court deferred the prevailing party designation on the first claim until an ORCP 68 hearing, it does not appear from the trial court register, the transcripts, or the supplemental judgment that Nay-as-trustee ever filed a cost bill, statement of attorney fees, or other subsequent request to be designated the prevailing party on that claim after the general judgment was entered.

None of Nay-as-trustee's challenges provides a basis on which to reverse the trial court's discretionary attorney fee award. The trial court, after hearing Nay-as-trustee's objections at the ORCP 68 hearing, and, after allowing Frakes to file an amended statement of attorney fees that better allocated the fees among the various claims, found that Frakes's "method of pursuing the relief awarded under his ORS 128.135 claim was reasonable." The trial court then awarded only fees that were incurred in prosecuting that claim, and even then, in an amount less than that sought by Frakes (the subject of one of Frakes's assignments of error). On this record, the court's decision to award attorney fees was well within the bounds of its discretion, and we therefore reject Nay-as-trustee's fourth assignment of error.

### III. CROSS-APPEAL BY FRAKES

#### A. *Claims Against Nay-as-trustee*

##### 1. *Award of attorney fees under ORS 20.105*

We turn, then, to Frakes's cross-appeal, picking up where we left off: the attorney fee litigation between Frakes and Nay-as-trustee. Frakes contends that the trial court erred in limiting his attorney fee award to those fees expended on his third claim for relief, because, although that claim would not otherwise carry a fee entitlement, Nay-as-trustee's defense was not objectively reasonable. Thus, Frakes argues, he was entitled to an award of attorney fees under ORS 20.105(1), which allows a prevailing party in a proceeding to recover the fees incurred in litigating against a defense that had "no objectively reasonable basis."

The crux of Frakes's position is that Nay-as-trustee had no factual or legal basis on which to object to his request for an accounting, the relief sought in Frakes's second claim, because *former* ORS 128.125(2) unambiguously required Nay-as-trustee to provide it at the time of the request. Under that statute, a "[b]eneficiary may request in writing that the trustee of a trust for the benefit of the beneficiary prepare" either or both "(a) [a]n itemized statement of receipts and disbursement of income and principal of the trust" over the preceding 12 months and "(b) [a]n itemized statement of all property held by the trustee as of the date

the request is received by the trustee." *Id.* The statute also defines "beneficiary":

> "As used in this section, 'beneficiary' means any vested income or remainder beneficiary of a trust, determined *as of the date the request described in this section is received by the trustee* * * *."

*Former* ORS 128.125(1) (emphasis added).

In Frakes's view, the statute is explicit regarding how a person's status as beneficiary is determined: The only question is whether the person seeking an accounting was a beneficiary *as of the date the request is received by the trustee.* And here, Frakes argues, there is no dispute that Frakes was a vested beneficiary under the trust at the time that he requested an accounting from Nay-as-trustee in February and December 2004.

Nay-as-trustee does not respond directly to Frakes's statutory construction argument. Rather, he argues that he mounted an objectively reasonable defense to the claim for relief based on principles of "standing"—that is, that Frakes lost the right to an accounting once he had (1) received his full distributive share under the trust and (2) violated the *in terrorem* clause. Either of those events, Nay-as-trustee argues, was sufficient to terminate his status as a "beneficiary" of the trust, and "[i]f Frakes was no longer a beneficiary, he no longer had beneficial rights to protect and no interest in ORS 128.125 relief." In short, Nay-as-trustee's "position is simple: it is absurd that a trustee might bear any continuing obligation to someone who is no longer a beneficiary."

The trial court agreed with Nay-as-trustee that his defense to the accounting claim was "objectively reasonable"; however, the "objectively reasonable" inquiry is one of law, which we review without deference to the trial court's ruling. *Williams v. Salem Women's Clinic*, 245 Or App 476, 482, 263 P3d 1072 (2011). A defense has "no objectively reasonable basis" if it was "entirely devoid of legal or factual support either at the time it is made or, in light of additional evidence or changes in the law, as litigation proceeds." *Id.* (internal quotation marks and citations omitted).

As he did below, Nay-as-trustee argues that he had an objectively reasonable basis to believe that Frakes's status as beneficiary was extinguished (either by full payment or by breaching the no-contest provision), and that from then on Frakes no longer had any practical or cognizable legal interest in an accounting under *former* ORS 128.125. We agree with Nay-as-trustee, and the trial court, that his defense was not entirely devoid of legal support.

Frakes is correct that *former* ORS 128.125(2) unambiguously authorizes a "beneficiary"—"determined as of the date the request *** is received by the trustee"—to seek a statement of assets and income, and to ask the court to "order the trustee to provide the statement," *former* ORS 128.125(5). However, the statute does not unambiguously foreclose an argument that, as a result of later events, a dispute about the accounting was no longer justiciable because a decision would not have any practical effect on the rights of the parties. *See Yancy v. Shatzer*, 337 Or 345, 349, 97 P3d 1161 (2004) ("[J]usticiability contemplates 'that the court's decision in the matter will have some practical effect on the rights of the parties to the controversy.'" (Quoting *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993)); *Hamel v. Johnson*, 330 Or 180, 184, 998 P2d 661 (2000) (a case must be dismissed as moot if it is impossible for a court to grant "effectual relief"); *Brumnett*, 315 Or at 406 (cases in which court's decision no longer will have practical effect on rights of parties will be dismissed as moot).[10]

In other words, although Nay-as-trustee may not have had a reasonable basis to object to the requests

---

[10] We express no opinion on whether Nay-as-trustee properly characterizes the issue as one of "standing." *See Kellas v. Dept. of Corrections*, 341 Or 471, 476-77, 145 P3d 139 (2006) (" 'Standing' is a legal term that identifies whether a party to a legal proceeding possesses a status or qualification necessary for the assertion, enforcement, or adjudication of legal rights or duties."); *id.* at 477 (where a statute circumscribes standing, "[t]he source of law that determines that question is the statute that confers standing in the particular proceeding that the party has initiated, 'because standing is not a matter of common law but is, instead, conferred by the legislature' " (*quoting Local No. 290 v. Dept. of Environ. Quality*, 323 Or 559, 566, 919 P2d 1168 (1996))). The crux of Nay-as-trustee's argument, however characterized, was that the claim for relief was not justiciable because Frakes no longer had any cognizable interest in the trust. *See Yancy*, 337 Or at 349 ("Encompassed within the broad question of justiciability are a constellation of related issues, including standing, ripeness, and mootness.").

for an accounting *at the time they were made*, Nay-as-trustee did have objectively reasonable grounds to defend against a later claim for relief, which invoked the court's judicial power, on the ground that a decision regarding the accounting would no longer have any practical effect on the rights of the parties. *Yancy*, 337 Or at 349 (moot cases are not justiciable). Accordingly, we affirm the trial court's ruling denying attorney fees on Frakes's claim for an accounting.

2. *Reduction in attorney fees*

As previously discussed with regard to Nay-as-trustee's appeal, the trial court did award attorney fees to Frakes on his third claim for relief, albeit in an amount lower than Frakes requested. In his second assignment of error on cross-appeal, Frakes argues that the trial court "erred in reducing [his] claimed attorney fees under his ORS 128.135 claim in the absence of any findings supporting such a reduction."

When a trial court orders a discretionary award of attorneys fees under ORS 20.075, as it did in this case, the court must make sufficient findings regarding the statutory criteria to facilitate "[e]fficient and meaningful appellate review for abuse of discretion." *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 185, 190-91, 957 P2d 1200 (1998). That said, "[a]dequate findings about those matters need not be complex or lengthy. Rather, they must describe the relevant facts and legal criteria for the court's decision to award or deny attorney fees in any terms that are sufficiently clear to permit meaningful appellate review." *Id.* It is sufficient for a trial court to "includ[e] in its order a brief description or citation to the factor or factors on which it relies"; the court ordinarily has no obligation to make findings on statutory criteria that play no role in the court's decision. *McCarthy*, 327 Or at 188.

Contrary to Frakes's contention, the trial court did make findings regarding its attorney fee award. In part, the court explained that it "understands that [Frakes] felt that [he] must wait until all the pleadings had been 'settled' before [he] should begin the 'discovery' process. But [Frakes] would also understand that this would increase the amount of legal effort that would be expended by [Frakes's] counsel."

The court further explained that, although Nay-as-trustee did not object to the hourly rates charged by Frakes's counsel, Nay-as-trustee had objected on the ground that "plaintiff expended an unreasonable amount of time, and that plaintiff's request for attorney fees does not properly allocate between the time spent [on] ORS 128.135 claims, and other claims made in this case," whereas Frakes "maintains that all hours expended were necessary and that their request for attorney fees is properly itemized." After describing the parties' respective positions, the order states,

> "This court finds that the arguments of each side have merit, but not to the extent argued by each side.
>
> "Accordingly, the court awards attorney fees to the plaintiff in the sum of $50,000 plus costs of $3,822.42."

Under the circumstances of this case, the trial court's findings are not sufficient for us to meaningfully review the court's attorney fee award. Frakes's attorney fee request sought more than $130,000. Nay-as-trustee objected on the grounds, among others, that (a) Frakes was seeking fees for time spent on claims other than his third claim for relief and (b) the hours claimed by Frakes were excessive. All we know from the findings is that the trial court agreed that "arguments of each side have merit, but not to the extent argued by each side"; thus, even if we were to assume that the trial court employed the rates suggested by Frakes (in the absence of an objection from Nay-as-trustee), we still have no way to know how the court went about reducing the hours—*i.e.*, what the court determined to be excessive or to have been spent on claims other than the fee-generating claim. In short, we would be required to speculate as to how the trial court reached its $50,000 attorney fee award. Accordingly, we vacate and remand the supplemental judgment for attorney fees for the trial court to further explain the basis of its award. *See Nieth and Nieth*, 199 Or App 330, 339-40, 111 P3d 746, *adh'd to as clarified on recons*, 200 Or App 582, 116 P3d 234 (2005) (vacating award of attorney fees because the trial court failed to identify which statutory factors supported its decision); *cf. McCarthy*, 327 Or at 188 n 1 ("If a petition seeks payment for 60 hours of attorney time at $200 per hour, and the court believes that some lesser award is appropriate, the court

could state in its order that, relying on the factors in ORS 20.075(2)(a) and (g), the court concludes that a reasonable number of hours is 50 and a reasonable hourly rate is $175 per hour. Ordinarily, the court would have no obligation, beyond providing that finding, to explain why the court does not accept the requested number of attorney hours or the requested hourly rate as reasonable, unless a more complete explanation is necessary in a particular case to permit meaningful appellate review.").[11]

### B.   *Claims against Nay-as-attorney*

Having resolved the issues between Frakes and Nay in his capacity as trustee, we turn to Frakes's assignments of error regarding his claims against Nay as an individual. Those claims, once again, were for breach of contract, negligence, and intentional interference with prospective economic relations.

### 1.   *Instructional error*

In his third assignment of error on cross-appeal, Frakes argues that the trial court erred in instructing the jury regarding intentional interference with his prospective inheritance. According to Frakes, the court declined to give his requested instruction and instead gave Nay's, which "had the effect of converting Frakes's claim for intentional interference with economic relations into a claim for undue influence."

Nay responds that the error is unreviewable, because Frakes did not take exception to the instruction after the jury was instructed. We agree. ORCP 59 provides:

> "H(1)   * * * A party may not obtain review on appeal of an asserted error by a trial court in submitting or refusing to submit a statement of issues to a jury pursuant to subsection C(2) of this rule or in giving or refusing to give an instruction to a jury unless the party who seeks to appeal identified the asserted error to the trial court and

---

[11] In response to this assignment, Nay-as-trustee advances a cross-assignment of error directed at the trial court's ruling allowing Frakes to file an amended statement of attorney fees at the conclusion of the attorney fee hearing. We reject that cross-assignment without discussion.

made a notation of exception immediately after the court instructed the jury.

"H(2)   *** A party shall state with particularity any point of exception to the trial judge. A party shall make a notation of exception either orally on the record or in a writing filed with the court."

In this case, Frakes proposed his own instruction regarding intentional interference with his prospective inheritance, and he objected to Nay's proffered instruction. The court instructed the jury as Nay requested and, after doing so, invited exceptions to the instructions:

"THE COURT:   We'll start with you, [Frakes's counsel]. Any exceptions to the instructions?

"[COUNSEL]:   Other than what we've previously covered?

"THE COURT:   We were on the record then, but if you want to [*sic*] more formalized. So whatever you think that you need to make your record. That's fine.

"[COUNSEL]:   Sure. You say we were not on the record before?

"THE COURT:   No. I think we were—

"[COUNSEL]:   Okay. Then—

"THE COURT:   —when we were having that discussion. But, you know, if you want to ensure things.

"[COUNSEL]:   Then, no. That's—nope. As read, fine."

As that colloquy demonstrates, Frakes never "state[d] with particularity any point of exception to the trial judge" after the jury was instructed, as ORCP 59 H requires. Nonetheless, Frakes argues that his post-instruction statements to the trial court were "nearly identical" to the exceptions in *Deason v. TriMet*, 241 Or App 510, 514 n 2, 251 P3d 779 (2011), a case in which we held that the "[p]laintiff's exception to the instruction after the jury was charged, that referred the court to the extensive argument on the record, was clearly sufficient to satisfy the requirements of ORCP 59 H."

In short, this case is nothing like *Deason*. After the jury was instructed in *Deason*, the plaintiff identified the particular instruction that was objectionable, excepting "to the special—or the addendum or the second part of the Special Duty instruction for the reasons that I've already advanced to the Court, and I do think it was crucially important." *Id.* at 514 n 2. In this case, Frakes simply directed the court generally to "what we've previously covered," which encompassed a number of different instructions that the parties had discussed. He did not identify with any particularity any point of exception and, accordingly, the claimed instructional error is not reviewable on appeal. *State v. Alonzo*, 249 Or App 149, 150-51, 274 P3d 889 (2012) ("Failure to except to a jury instruction bars appellate review of an unpreserved objection in two situations: (1) when the trial court delivers an instruction that a party later contends was erroneous; and (2) when the trial court refuses to deliver an instruction that a party requested."); *State v. Guardipee*, 239 Or App 44, 48, 243 P3d 149 (2010) (explaining preclusive effect of ORCP 59 H with respect to plain error review).

### 2. *Special verdict questions*

In his final assignment of error on cross-appeal, Frakes contends that he was prejudiced by the special verdict form that was used—more specifically, by the inclusion of the first two questions on the verdict form:

"1.   Did Velma Saling lack testamentary capacity on March 19, 1996, at the moment she signed the 1996 Trust?

"* * * * *

"2.   Did Velma Saling sign the 1996 Trust as a result of undue influence exerted by Tim Nay and Carol Saling?"

The verdict form provided that, "[i]f your answers to question 1 and question 2 are 'NO,' STOP. Your verdict is for defendant." Frakes argues that neither question should have been asked and that, because the jury answered "no" to both, it never reached the merits of his claims.

Nay initially responds that the claim of error is unpreserved because, "[a]s with the jury instructions," Frakes "did not note exceptions on the record after the

jurors were instructed and the verdict form supplied to them." We are not aware of any authority, and Nay has not offered any, to support his view that ORCP 59 H applies directly to exceptions to a verdict form; the text of the rule itself covers only "asserted error[s] by a trial court in submitting or refusing to submit a statement of issues to a jury pursuant to subsection C(2) of this rule or in giving or refusing to give an instruction."[12] Frakes offered his own verdict form that did not include the first two questions regarding testamentary capacity and undue influence, and he vehemently objected to Nay's proposed verdict form on the very ground that he now asserts on appeal. Thus, there is no dispute that the trial court understood the parties' respective positions before the verdict form was given to the jury. *State ex rel Sam's Texaco & Towing v. Gallagher*, 314 Or 652, 663, 842 P2d 383 (1992) ("[ORCP 59 H and case law regarding special verdict forms] require that a party object to the form of a question in a special verdict *before the jury retires*. Otherwise, the right to raise the issue is waived." (Emphasis added.)). That is all that is required to preserve the claim of error for appeal under ordinary preservation principles. *See State v. Parkins*, 346 Or 333, 339, 211 P3d 262 (2009) ("The purpose of the preservation rule is the practical one of requiring a defendant to provide an explanation of his or her position specific enough to ensure that the [trial] court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." (Internal quotation marks and citations omitted.)).

Thus, we turn to the merits of the parties' arguments. Frakes's contentions proceed from the premise that, although undue influence and Velma's testamentary capacity in 1996 were relevant to determining the scope of Nay's obligations as an attorney and the nature of his conduct as an attorney, they were not *necessary* predicates to his claims. In other words, Frakes maintains that he could have prevailed on his breach of contract and tort claims even if he could not prove that Velma was unduly influenced or lacked testamentary capacity in 1996. Thus, he argues, the

---

[12] ORCP 59 C(2) allows the court, in its discretion, to "submit to the jury an impartial written statement summarizing the issues." It does not implicate jury instructions or verdict forms.

trial court erred in using Nay's proposed verdict form, which required the jury to find either that undue influence or lack of testamentary capacity in 1996 before proceeding.

Nay, meanwhile, argues that Frakes cannot now distance himself from his own pleadings and that the "factual predicate for all three of his claims is that Velma Saling lacked capacity when she signed the trusts, or that she signed them as a result of undue influence exercised by her husband. *If plaintiff cannot prove lack of capacity or undue influence, he has no damages*." (Emphasis added.)

Nay is correct that Frakes's breach of contract, negligence, and intentional interference claims include a number of allegations that are based on Velma either lacking testamentary capacity or being unduly influenced in 1996. However, the claims were not limited to those allegations. Frakes's malpractice claim, for example, alleged more generally that "Nay, as attorney for Velma Saling, violated his duties to Velma Saling and Frakes" by, among other things, failing

> "to preserve, protect, and effectuate Velma Saling's testamentary intent to leave at least one-half of her estate to Frakes, and instead gave preference to Carol Saling's testamentary intent, without making an adequate, or any, investigation into the testamentary capacity of Velma Saling, without obtaining Velma Saling's informed consent to this process, and without otherwise taking any steps to ensure that Velma Saling's interests and testamentary intent were protected[.]"

That theory—that Nay knew of Velma's testamentary intent to leave at least one-half of her estate to Frakes and did not competently effectuate that intent—does not depend upon whether Velma lacked testamentary capacity or was subject to undue influence; even if Velma had testamentary capacity and was exercising independent judgment regarding her estate, she (and Frakes) could have been damaged by relying on Nay "to act as a reasonably competent attorney inprotecting and defending the interests of the client." *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 160, 843 P2d 890 (1992).

Frakes's breach of contract claim likewise included allegations that were broad enough to encompass conduct that would have damaged Velma and Frakes regardless of

whether Frakes could prove that Velma lacked testamentary capacity or was unduly influenced in 1996. Frakes alleged, among other things:

> "As the sole intended beneficiary of Velma Saling's estate plans at all pertinent times, Frakes has been damaged by Nay's breaches of his contract of employment with or representation of Velma Saling, in that Nay failed to prepare and perfect an estate plan for Velma Saling that left Frakes the entirety of Velma Saling's interest in the Salings' joint estate. The amount by which Frakes has been damaged is equal to the difference between the distribution due him under Velma Saling's trust (*i.e.*, $500,000), and that which he would have received had Nay properly discharged his contractual duties to Velma Saling, all in an exact amount to be proven at trial, but currently estimated at no less than $3,500,000."

(Paragraph numbering omitted.) Short of lacking testamentary capacity or being unduly influenced when she signed the trust documents in 1996, Velma (and Frakes) could have been damaged by Nay's failure to perform as promised under the employment contract simply because she relied on Nay to protect her interests as promised in the agreement.

Frakes's claim for intentional interference with prospective economic relations, too, was broader than a claim that Velma signed the 1996 trust as a result of undue influence or that she lacked testamentary capacity when she signed it. Frakes also alleged that Nay had intentionally interfered with Frakes's economic relations regarding the 1990 trust and then, in an effort to preserve his own future economic interest as successor trustee, inserted a no-contest clause in the trust and also continued representing both Carol and Velma despite an apparent conflict of interest. The remainder of the verdict form asked questions about whether Nay "intentionally interfere[d] with [Frakes's] prospective inheritance as it stood in 1990 through his representations of Velma Saling and related preparation of the 1990 Trust," and whether Frakes was damaged by that interference. However, the jury did not reach those allegations because it answered "no" to the questions about the 1996 trust.

In sum, we agree that the special verdict form erroneously asked two questions that should not have been

used to dispose of Frakes's breach of contract and tort claims as they were pleaded, tried, and sent to the jury, and that the error was prejudicial with respect to the jury's consideration of those claims.

### 3. Cross-assignments of error by Nay

Because the trial court committed reversible error with regard to the verdict form, we must also consider Nay's cross-assignments of error, which challenge earlier trial court rulings on each of the three claims against him as an individual. According to Nay, none of those claims should have ever reached a special verdict form in the first place, because he was entitled to judgment as a matter of law on each.

### a. Breach of contract

As for the breach of contract claim, Nay argues that the trial court should have granted his motion for judgment on the pleadings, and then his motion for a directed verdict, because Frakes's allegations sounded only in negligence and not in breach of contract. He further argues that any breach of contract claim accrued more than six years before Frakes commenced this action, and that the claim was therefore barred by the statute of limitations. We agree with Nay's latter contention and do not address the former.

Assuming, for the sake of argument, that Frakes's complaint states a claim arising out of a contract, such a claim is barred by ORS 12.080, which provides that an "action upon a contract or liability, express or implied" must be commenced within six years of its accrual. *See* ORS 12.010 ("Actions shall only be commenced within the periods prescribed in this chapter, *after the cause of action shall have accrued*, except where a different limitation is prescribed by statute." (Emphasis added.)). "[I]t is well settled that a contract claim accrues on breach," and not when that breach is subsequently discovered. *Waxman v. Waxman & Associates, Inc.*, 224 Or App 499, 512, 198 P3d 445 (2008) (ORS 12.080 does not incorporate a discovery rule).

As alleged in the complaint, "[i]n agreeing to undertake the representation of Velma Saling, Nay promised to perfect, protect, and effectuate Velma Saling's testamentary

intent, which at that point called for the entirety of Velma Saling's estate to pass to Frakes upon her death." Nay allegedly breached that promise, as well as additional promises "[i]mplied in this promise," by failing to "prepar[e] estate planning documents that left virtually all of Velma Saling's estate to Frakes"; "[b]y preparing and allowing Velma Saling to execute estate planning documents that reflected only Carol Saling's testamentary plans"; by failing to undertake any efforts to learn Velma's independent understanding of her estate or testamentary capacity; by creating an estate plan that conferred a benefit on Nay himself; and by proceeding "under circumstances where he knew a conflict of interest existed." Those alleged breaches occurred, if at all, when Nay prepared and allowed Velma to execute the estate-planning documents in 1990 and 1996. Frakes did not commence this action until July 2005, well outside the six-year statute of limitations. The trial court should have granted Nay's motion for judgment on the pleadings (and, later, his motion for a directed verdict) with regard to the breach of contract claim. Accordingly, we affirm the judgment as it relates to that claim, notwithstanding the problem with the form of the verdict discussed above.

b.   Negligence (professional malpractice)

As with the breach of contract claim, Nay cross-assigns error to the trial court's denial of his motions for judgment on the pleadings and for directed verdict on Frakes's negligence claim. He argues that Frakes failed to allege or prove that he was an intended beneficiary of any promise that Nay made to Velma and, for that reason, cannot maintain a negligence claim based on his purely economic loss. Nay further argues that the claim is barred by the two-year statute of limitations for negligence actions, ORS 12.110(1).

(1)   Failure to state a claim

Generally, a negligence action in which the plaintiff claims only economic damages does not state a cognizable claim unless the plaintiff can identify a source of duty running to him or her from the alleged tortfeasor, outside of the general common-law duty to avoid unreasonable risk of foreseeable harm. *Hale v. Groce*, 304 Or 281, 284, 744 P2d 1289 (1987). An attorney has such a duty with respect to

his or her client. According to Nay, the court should have granted judgment in his favor on the negligence claim because Frakes failed to allege or prove any source of duty that would allow Frakes—a stranger to the attorney-client relationship between Nay and Velma—to recover for purely economic losses arising out of Nay's negligent performance as an attorney. *See Caba v. Barker*, 341 Or 534, 541 n 3, 145 P3d 174 (2006) (residual legatees "would not be able to sustain their claims under the more general, professional negligence standard, because they are not parties to the contract between defendant and testator and the damages that they assert are financial only"). Frakes, for his part, argues that he was the sole object of Velma's donative intent and the intended third-party beneficiary of Nay's promise to effectuate that intent; thus, he argues, "the contract creates a 'duty' not only to the promisee, the client, but also to the intended beneficiary." *Hale*, 304 Or at 286.

Like the parties' arguments, our analysis begins with *Caba* and *Hale*, both of which involved negligence claims arising out of estate-planning work. In *Hale*, the plaintiff brought both breach of contract and negligence claims against an attorney who, despite his client's directions, had not included a bequest to the plaintiff in the client's will and related trust instrument. In examining the viability of both the negligence and breach of contract claims, the court first turned to third-party beneficiary principles:

> "We agree that the beneficiary in these cases [where the attorney fails to carry out the decedent's instructions to the plaintiff's detriment] is not only a plausible but a classic 'intended' third-party beneficiary of the lawyer's promise to his client within the rule of Restatement section 302(1)(b) and may enforce the duty so created, as stated *id.* section 304. *See, e.g., Johnson v. Doughty*, 236 Or 78, 83, 385 P2d 760 (1963); *Parker v. Jeffery*, 26 Or 186, 189, 37 P 712 (1894) (stating rule that a contract may be enforced by one for whose benefit it was intended)."

304 Or at 286. The court then explained that a "duty" arising under third-party beneficiary principles could also support a negligence claim by that intended beneficiary:

> "Because under third-party analysis the contract creates a 'duty' not only to the promisee, the client, but

also to the intended beneficiary, negligent nonperformance may give rise to a negligence action as well. Not every such contract will support either claim. A contract to prepare a will or other instrument may promise different things. It may undertake to make a particular disposition by means specified by the client (for instance, in trust, or by a gift of identified property), or to accomplish the intended gift by specified means of the lawyer's choosing. Failure to do what was promised then would be a breach of contract regardless of any negligence. On the other hand, the lawyer's promise might be to use his best professional efforts to accomplish the specified result with the skill and care customary among lawyers in the relevant community. Because negligence liability of this kind arises only from the professional obligation to the client, it does not threaten to divide a lawyer's loyalty between the client and a potentially injured third party, as defendant argues."

*Id.* at 286-87.

Subsequently, in *Caba* the court reiterated that the relevant third-party beneficiary principles discussed in *Hale* derived from contract principles:

"The court in *Hale* considered a will beneficiary to be a classic 'intended' third-party beneficiary when the facts satisfy the standards in the *Restatement (Second) of Contracts*, section 302 (1981), which provides:

"'Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

"'(a)   the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

"'(b)   the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

"'(2)   An incidental beneficiary is a beneficiary who is not an intended beneficiary.'"

341 Or at 540.

In *Caba*, the plaintiffs had "invoke[d] *Hale* (and the *Restatement*) alleging that [the defendant attorney's] promise to the testator to draft a will that included a specific bequest to them (to make them residual legatees) 'included an implied promise to make the will invulnerable to a will contest so as to achieve [the testator's] plan to maximize gifts to residuary beneficiaries.'" 341 Or at 540. The Supreme Court rejected their argument, however, "because (as plaintiffs themselves have pleaded) that [second] part of defendant's promise was only 'implied,'" and the complaint failed to allege any basis—factual or legal—for that implication. *Id.* In a footnote, the Supreme Court then explained:

> "Plaintiffs would not be able to sustain their claims under the more general, professional negligence standard, because they are not parties to the contract between defendant and testator and the damages that they assert are financial only."

*Id.* at 541 n 3 (citing *Hale*, 304 Or at 284-87).

We understand *Hale* and *Caba*, read together, to stand for the following proposition: To sustain a negligence claim for financial loss, a plaintiff who is not a party to the contract between the defendant attorney and the testator must prove (1) that the attorney actually made an express or implied promise to the testator (2) under circumstances that indicate that the testator intends to give the plaintiff the benefit of the promised performance. Standing alone, an attorney's promise to the testator to use the skill and care customary among lawyers in the relevant community is not a promise to obtain a particular result for the plaintiff's benefit that will support a third-party negligence claim for financial loss.

In his complaint, Frakes alleged that he was the intended beneficiary of Nay's promise to perfect, protect, and effectuate Velma's testamentary intent, and that the circumstances—namely, that Velma's pre-Alzheimer's testamentary intent was to leave her half of the Saling estate to Frakes—were sufficient to demonstrate that Frakes was the intended beneficiary of that promise. Nay, meanwhile, argues that the alleged promise amounts to nothing "above

and beyond the general standard of care in the attorney-client relationship."

Although it presents a close question, we conclude that Frakes has the better argument. Frakes's allegations and evidence, when viewed in the light most favorable to him,[13] established that Nay agreed to create an estate plan to carry out Velma's testamentary intent, under circumstances demonstrating that Velma's testamentary intent was to leave nearly all of her estate to Frakes, the nephew whom she had raised since he was 12. Based on those facts, a juror could reasonably infer that Nay, in undertaking to represent Velma, impliedly promised to obtain a particular result for Velma—namely, an estate plan that would allow substantially all of her share of the estate to pass to Frakes. As an intended beneficiary of that type of promise, *Hale*, 304 Or at 286, Frakes can assert a claim based on Nay's negligent performance of the promise. Thus, the trial court did not err in denying Nay's motions for judgment on the pleadings and for a directed verdict based on his failure to state a claim for negligence.

### (2) Statute of limitations

Alternatively, Nay argues that Frakes's negligence claim, like his breach of contract claim, is time barred. *See* ORS 12.110(1) (negligence claims must be filed within two years of their accrual). However, negligence claims, although subject to a shorter statute of limitations than "an action upon a contract," accrue differently from breach of contract claims. In *Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or 270, 277-78, 265 P3d 777 (2011), the Supreme Court explained that the statute of limitations on a claim for professional malpractice does not begin to run until the plaintiff "both suffers damage and knows or, in the exercise of reasonable care, should know that the substantial damage actually suffered was caused by the lawyer's acts or omissions." (Internal quotation marks, citations, and

---

[13] Although we review the denial of a motion for judgment on the pleadings based on the pleadings and the denial of a motion for a directed verdict based on the evidence adduced at trial, the parties have not developed separate arguments in that regard. They treat the question as one of law, assuming that the pleaded facts did not differ materially from the evidence presented at trial. Following the parties' lead, we likewise combine our discussion of the pleading and proof issues.

emphasis omitted.) The application of that discovery rule "is a factual issue for the jury unless the only conclusion a reasonable jury could reach is that the plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time thereafter." *T. R. v. Boy Scouts of America*, 344 Or 282, 296, 181 P3d 758 (2008).

In this case, Frakes argues that he did not know, and could not have known, that he had suffered damage from Nay's negligence in performing his promises until Velma's death in November 2004, when it was no longer possible for Velma (or her agents under a durable power of attorney) to amend the trust or revoke part of it. We agree with Frakes and the trial court's conclusion that, given the totality of the factual circumstances surrounding the 1996 trust documents and Nay's continued involvement in the trust, the timeliness of Frakes's negligence claim is a question for the jury.[14]

Having rejected Nay's cross-assignments of error regarding Frakes's negligence claim, we conclude that the judgment must be reversed and remanded as to that claim because of the erroneous verdict form.

### c. Intentional interference with prospective economic relations

Last, Nay contends that the trial court erred in denying his motions for judgment on the pleadings and a directed verdict on Frakes's claim for intentional interference with prospective economic relations. We are not persuaded that the court erred in denying those motions.

In *Allen v. Hall*, 328 Or 276, 280, 974 P2d 199 (1999), the Supreme Court held that "an intentional interference

---

[14] Nay acknowledges that Frakes "alleges negligence regarding execution of the 1996 Trust" but points out that conduct occurring before July 1995 is barred by the 10-year statute of ultimate repose, ORS 12.115(1) ("In no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of."). He complains that, despite a pretrial ruling that limited the scope of the claim to post-July 1995 conduct, Frakes "continued at trial to rest his case on events in 1990." Frakes, meanwhile, argues that ORS 12.115(1) does not apply to claims based on financial loss rather than injury to "person or property." Neither party properly assigns error to any ruling that requires us to address the statute of ultimate repose, and we do not discuss it further.

with a prospective inheritance may be actionable under a reasonable extension of the well-established tort known as intentional interference with economic relations." The court explained that the following of the tort of intentional interference with economic relations were applicable, by a principled extension, to the context of a prospective inheritance:

> "(1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage); (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and (6) damages."

328 Or at 281.

Nay argues, first, that Frakes's intentional interference claim fails as a matter of law because Frakes did not directly challenge the trust in probate court and, for that reason, cannot prove the requisite causal effect (the fifth ) or damages (the sixth ). In *Butcher v. McClain*, 244 Or App 316, 325, 260 P3d 611 (2011), the defendants advanced a similar argument that "a claim for intentional interference with economic relations based on interference with a prospective inheritance is available only when there is no adequate remedy in probate." We squarely rejected the argument that an available probate remedy somehow precludes a tort claim:

> "We think that the Supreme Court's opinion in *Allen* adequately disposed of that contention:

>> "'Defendants ascribe a breadth of purpose to the Oregon Probate Code that is not borne out by the statutes. Although it is true that that code strictly controls the kinds of issues that can be litigated in a proceeding to probate a will, and presumably requires plaintiffs to pursue those issues in the probate system where possible, that fact does not necessarily translate into a broader legislative purpose to deny legal significance to any other issue that might arise out of a decedent's making of, or failure to make, a will. Whether or not the probate code is or may be a "complete" legislative

scheme, it is complete only within the confines of its subject matter, *i.e.*, will contests. A tort claim does not become a will contest simply because it arises out of facts relating to the making or unmaking of a will.'

"328 Or at 284. *It is possible that plaintiffs could have contested Betty's will, a question that we need not address here. That does not prevent them from bringing this separate tort claim.*"

*Butcher*, 244 Or App at 325 (emphasis added).

Following our reasoning in *Butcher*, we reject Nay's contention that a probate challenge to the trust was somehow a prerequisite to bringing a claim for intentional interference with prospective economic relations.

Next, Nay argues that Frakes's claim for intentional interference is barred by the two-year statute of limitations in ORS 12.110(1), because the claim accrued upon the death of Carol in 2002. At that point, Nay argues, Frakes was damaged because "the trust could no longer be amended, [Frakes's] 'expectancy' of half of the total estate under the alleged 1959 wills." Frakes responds that "Carol Saling's death is irrelevant to the inquiry because Velma Saling (or if incapacitated, her agent * * *) retained the ability to amend or revoke her estate planning documents"—that is, that Velma or her attorney (Nay) could have "'righted the wrong' resulting from the creation of the 1990 and 1996 Trusts."

We agree with Frakes that his alleged prospective inheritance—substantially all of Velma's share of the estate—was lost when Velma died in 2004. For purposes of Frakes's intentional interference claim, that is the point at which the statute of limitations began to run. *See Butcher*, 244 Or App at 324 ("[A]lthough the alleged interference occurred when defendants caused Betty to execute a will disinheriting Rachelle and the children, *plaintiffs were not damaged by that interference until Betty's death, when they lost their expected inheritance.* Thus, we conclude that the trial court erred in dismissing the claim based on the statute of limitations." (Emphasis added.)).

Because we reject Nay's cross-assignments of error regarding alternative bases for affirming the judgment as to the intentional interference claim, we reverse and remand

the judgment as to that claim because of the erroneous verdict form previously discussed.

## IV.  CONCLUSION

In sum, we affirm the general judgment insofar as it grants relief on the claims against Nay-as-trustee and denies relief on the breach of contract claim against Nay as an individual. However, we reverse and remand that judgment as to the tort claims against Nay individually, because the claims were submitted to the jury on an erroneous special verdict form. As for the supplemental judgment for attorney fees, we reject Nay-as-trustee's challenges to the discretionary award of fees, but we vacate and remand for the trial court to further explain the basis for awarding the amount that it did.

On appeal, affirmed. On cross-appeal, general judgment reversed and remanded as to claims for negligence and intentional interference with prospective economic relations, otherwise affirmed; supplemental judgment for attorney fees vacated and remanded.